**20-2604**
_____

**United States Court of Appeals
For the Seventh Circuit**
_____

APOSTOLOS XANTHOPOULOS,

*Plaintiff-Appellant*,

v.

UNITED STATES DEPARTMENT OF LABOR,

*Defendant-Appellee*,

MARSH & MCLENNAN COMPANIES, INC.,
Doing business as MERCER INVESTMENT CONSULTING, LLC,

*Intervenor – Defendant-Appellee.*

_____

On Appeal from the United States Department of Labor
Agency Case No. 2019-0045
_____

**APPELLANT'S BRIEF AND APPENDIX**
_____

George S. Bellas
Jillian Tattersall
Bellas & Wachowski
*Counsel of Record*
15 N. Northwest Highway
Park Ridge, Illinois 60068
(847)-823-9032
george@bellas-wachowski.com
jillian@bellas-wachowski.com

*Attorneys for Appellant*

# TABLE OF CONTENTS

DISCLOSURE STATEMENT ii

TABLE OF AUTHORITIES iii

JURISDICTIONAL STATEMENT 1

STATEMENT OF THE ISSUE 1

STATEMENT OF THE CASE 2

 A. Dr. Xanthopoulos Filed Multiple TCRs Expressing His
   Fear of Termination and Seeking Assistance from the SEC. 2

 B. Dr. Xanthopoulos Filed Multiple TCRs After His
   Termination Seeking Assistance from the SEC. 3

 C. When the SEC Failed to Act, Dr. Xanthopoulos Sought Out
   Other Fora. 7

STANDARD FOR REVIEW 9

SUMMARY OF ARGUMENT 9

ARGUMENT 10

 A. Dr. Xanthopoulos Set Forth All Elements of a SOX
   Wrongful Termination Claim Before the SEC. 12

 B. Because Dr. Xanthopoulos Raised His Claim in the
   Wrong Forum, the Statute Should be Tolled. 15

CONCLUSION 17

CERTIFICATE OF COMPLIANCE 18

PROOF OF SERVICE 19

SEPARATE APPENDIX CERTIFICATE OF REQUIRED MATERIALS 20

APPENDIX TABLE OF CONTENTS 21

CERTIFICATE OF SERVICE 22

## DISCLOSURE STATEMENT

1. The full name of the party that the undersigned attorney represents in the case: Appellant Apostolos Xanthopoulos.

2. The name of all law firms whose partners or associates have appeared on behalf of the party in the case (including proceedings before the agency) or are expected to appear for the party in this Court: Bellas & Wachowski.

3. If the party or amicus is a corporation: not applicable.

/s/ George S. Bellas
George S. Bellas
c/o Bellas & Wachowski
15 N. Northwest Highway
Park Ridge, Illinois 60068
(847)-823-9032
george@bellas-wachowski.com

*Attorneys for Appellant*

# TABLE OF AUTHORITIES

CASES                                                                                              PAGE

*Hillis v. Knochel Bros.*, ARB Nos. 03-136, 04-081, 148,
ALJ No. 02-STA-050, (ARB MAR. 31, 2006) …………………………………………… 16

*Irwin v. Dep't of Veteran Affairs*, 498 U.S. 89 (1990) ……………………………………….. 14

*Miller v. Basic Drilling Co.,* ARB No. 05-111,
ALJ No. 2005-STA-20 (ARB Aug. 30, 2007)……………………………………………… 15-16

*Taylor v. Express One Int'l., Inc.,* 2001-AIR-2 (ALJ FEB. 17, 2007) ……………………….. 13

*Turgeau v. Administrative Review Bd.,* 446 F.3d 1052 (10th Cir., 2006) …………………... 13-14

*Williams v. Administrative Review Board*, 376 F.3d 471 (5th Cir. 2004) ……………………. 9-10


STATUTES

Sarbanes-Oxley Act, 18 U.S.C. §1514a, 29 C.F.R. §1980, amended ……………………….. 1, 8

49 U.S.C. §42121(b) ……………………………………………………………………………. 1, 9

## JURISDICTIONAL STATEMENT

This is an administrative appeal from a decision of the United States Department of Labor Administrative Review Board. Dr. Apostolos Xanthopoulos ("Dr. Xanthopoulos") initiated these proceedings by filing a retaliation complaint under Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002, Title VIII of the Sarbanes-Oxley Act ("SOX"), 18 U.S.C. § 1514A (2010) and its implementing regulations, 29 C.F.R. Part 1980 (2019) with the Occupational Safety and Health Administration ("OSHA") on September 18, 2018. On March 22, 2019, after receiving Complainant's response to an order to show cause for untimeliness, the ALJ dismissed the complaint. After the Administrative Law Judge issued their decision, Dr. Xanthopoulos petitioned for review before the Administrative Review Board ("ARB"), which had jurisdiction to issue their final decision, which denied Complainant's request to reinstate his SOX claims, under 29 C.F.R. § 1980.110.

On August 28, 2020, Dr. Xanthopoulos filed a Petition for Review in this Honorable Court, vesting this Court with jurisdiction to hear the appeal. *See* 18 U.S.C. § 1514A (providing that Sarbanes-Oxley whistleblower claims are governed by the rules and procedures set forth in 49 U.S.C. § 42121(b)); 49 U.S.C. § 42121(b)(4)(A) (providing for review in the United States Court of Appeals); 29 C.F.R. § 1980.112(a) (same).

## STATEMENT OF THE ISSUE

Whether the ARB's determination is arbitrary and capricious where out of context statements made with regards to an unrelated claim and a pro se Petitioner's failure to use precise statutory language formed the basis of the ARB's decision.

Apostolos Xanthopoulos, Ph.D., ("Dr. Xanthopoulos") has filed numerous reports detailing securities-related fraud by his former employer, Marsh & McLennan Companies, Inc. d/b/a Mercer Investment Consulting ("Mercer") with the Securities and Exchange Commission ("SEC") since 2011. Dr. Xanthopoulos also added complaints of retaliation and wrongful termination to many of his reports filed with the SEC since March of 2014.

Counsel did not represent Dr. Xanthopoulos when he made these reports. He mistakenly believed that the complaints, first of fear of retaliatory termination and later of actual retaliatory termination, filed with the SEC constituted a valid claim of wrongful termination. He believed these claims would be investigated and then adjudicated by that agency.

**A. Dr. Xanthopoulos Filed Multiple TCRs Expressing His Fear of Termination and Seeking Assistance from the SEC.**

From the moment that he filed his first retaliation related Tip, Complaint, or Referral ("TCR") filed with the SEC on March 3, 2014, which followed several complaints to Mercer internally, Dr. Xanthopoulos stated that he was hired to perform statistical analyses regarding Mercer's ratings of investment portfolios. A.58-59. His work uncovered the fact that his employer "knowingly disseminates ratings (by selling them to clients) that do not appear to capture reality …." A.59-60. Dr. Xanthopoulos also informed the SEC that Mercer would easily be able to identify him as the source of the information based solely on the statistical analyses, stating that "I am very scared that I will be fired, immediately." A.60.

On August 13, 2015, Dr. Xanthopoulos filed another TCR with the SEC regarding Mercer Investment Consulting that stated, "company's ratings do not account for portfolio performance." A.65. This TCR went on to relay Dr. Xanthopoulos's concern that he was facing repercussions at his job because he refused to alter the results of his studies. "Instead of taking corrective action to

ensure that ratings represent reality, the employer claimed that I am not doing my job in general."
A.66. In addition to detailing that Mercer was ignoring his analyses and misleading clients, Dr.

Xanthopoulos was afraid that everyone involved with Mercer would ultimately be arrested.  laid

out his fear for his job as a result of his communications with the SEC as follows:

> I do not have an attorney (yet). I still work at Mercer, so all
> information has been attained through my work I am the only one
> that has worked on the project mentioned here. The firm is
> beginning to discuss, unofficially, that there is a problem, as I state.
> Every piece of document contained in this folder or any other file,
> related, will identify me as the source. Nobody else in my
> department has the level of knowledge and skill required to perform
> this kind of analysis. This is one of the types of work that I was hired
> to do (although later, the employer states mis-stating facts). I am
> very scared that I will be fired immediately.

A.67.

## B. Dr. Xanthopoulos Filed Multiple TCRs After His Termination Seeking Assistance from the SEC.

Mercer fired Dr. Xanthopoulos on October 3, 2017 just as he had predicted and feared. On

that same day, Dr. Xanthopoulos filed another TCR with the SEC. A.71-74. Dr. Xanthopoulos, at

this time still pro se, wrongly believed that the SEC, the agency where he had reported Mercer's

wrongdoing, was also the proper forum to raise his wrongful termination claim. In

TCR1507870144638 filed on October 12, 2017, Dr. Xanthopoulos stated, "I am the one who got

fired, for telling my superiors, that I cannot establish ANY statistical relation between their ratings,

and performance … ." A.71.

On January 16, 2018, Dr. Xanthopoulos set forth his retaliation claim in

TCR1516139338494. A.76-80. Dr. Xanthopoulos's words demonstrate that he truly believed the

SEC was the proper forum in which to file his claim for retaliatory termination. In this TCR, he

stated:

I believe the employer has already retaliated against me (I was fired) because I contacted the Securities and Exchange Commission, and an SEC investigation on-site ensued immediately afterward. I believe Mercer found out, that it was me who 'caused' the investigation, based on information I have from sources. What I had reported to your Commission, was that I did a study, which proved some of the claims that the firm makes in encouraging and guiding its clients to invest in certain portfolio strategies, are statistically unproven, if not outright false. I believe when hired, Mercer had expected me to produce results that validated their practices, in a positive way. Unfortunately for both myself and Mercer, I was unable to find such statistical evidence (I created and ran upwards of five different studies, the full results of which I intend to send you over time, as quickly as I can). I am in essence punished, because (i) I adhere to the truth, and (ii) I refuse to succumb to implicit pressure by this behemoth in consulting services, as most everybody else appears to do, because of Mercer's size and ability to influence the future existence of portfolio managers. Ultimately, the interest of the investing public (the fire-fighter and school teacher that wants to retire safely) is not served. Specifically, Item (iii) on page 1 of my attached document "The File is Incomplete," which I am now working on, will show that my colleagues LACK MATERIAL KNOWLEDGE IN FINANCE AND ECONOMICS that should preclude them from acting as consultants or strategy raters of anything, let along sway the flow of trillions of dollars in and out of retirement accounts of the U.S. and overseas population.

…

I was working there. I made a study as they wanted me to. They did not like the results of it, and I was not about the change them. They changed my role, set me up, made up stuff about my performance, and then fired me. In the middle of all this, I had contacted your office (the SEC) and your office had conducted an on-site investigation to see if there were instances of 'pay for play.' It is my belief, that the employer associated your investigation with me, because I had already raised concerns stemming from my study, all the way to the CEO of the company, Mr. Julio Portallatin.

…

Even the mention of an SEC prompt to Mercer, would reveal my identity, or at least make the employer suspicious that I am 'behind it.' While at Mercer I had raised succinct concerns about all of the facts I am now sending your Commission. The Attorney's Office of Mercer then informed me that my concerns were not valid. Then, your Office, independently, conducted an investigation. A little time

afterward, I was fired. I am sorry that I am a professional and an academic, who adheres to the truth, at any cost. I am putting myself out there, risking future employment opportunities and making my wife leery of what my future professional prospects will look like. But, what Mercer does must be stopped. In my opinion. The ratings they assign CAPTURE AND REPRESENT NOTHING. THERE HAS NOT BEEN A VALID STATISTICAL STUDY, WHICH SHOWS OTHERWISE. MERCER NEEDS TO NOTIFY ALL OF THEIR CLIENTS OF THAT STATISTICAL FACT, UNLESS AND UNTIL THEY PRODUCE ONE ON THEIR OWN (which most likely, they won't be able to because the level of knowledge and understanding of financial markets, at least the Fixed Income Boutique where I was working, is sub-par. This is my opinion, as a published academic and professor in various universities.

A. 76-79.

Dr. Xanthopoulos again referenced these same complaints on February 7, 2018 in TCR15180084555. A.82-92. The TCR specifically asked, "Were you retaliated against for reporting the matter at issue in this submission either internally at the entity or to a regulator?" This wording led Dr. Xanthopoulos to believe that he was filing a claim for wrongful termination and retaliation with the SEC. Dr. Xanthopoulos wrote:

TCR1516139338494 refers to the fact that the employer has already retaliated against me (I was fired) because I contacted the Securities and Exchange Commission, and an SEC investigation on-site ensued immediately afterward. Mercer found out, that it was me who 'caused' the investigation, based on the fact that I had contacted the Office of the CEO, Mr. Julio Portallatin, regarding the results of my study. … Not only did it happen, but my HR file was manipulated in such a way that any evidence of my statistical work is never to be found.

A.84.

Dr. Xanthopoulos referenced his pending retaliatory termination again in his March 10, 2018 TCR, number 15207635859. A.94-105. When completing the section related to retaliation, he replied, "I am not going to refer to what happened to me, we all know that. I got fired." Dr.

Xanthopoulos went on to outline exactly why it was so easy for Mercer to identify him based solely on the SEC inquiries as he was the only employee with the background necessary to run the analysis that exposed Mercer's flawed statistics. *Id.*

In Dr. Xanthopoulos's words, "Anything in this series of reports, any activity, any visit of the SEC to Mercer, or any communication, will immediately lead to suspicion about me contacting your office. I don't care, at this point. I am becoming increasingly suspicious, that rating and research practices at Mercer, pose a systemic threat to the U.S. financial system." A.101.

Dr. Xanthopoulos outlined for the SEC the statistical model that he had created, the senior people at Mercer to whom he showed it, and why these people were unable to generate the model themselves or in some cases why they could not even understand it and were therefore unqualified to be informing the public of the associated investment performance. A.101-102.

Dr. Xanthopoulos did exactly what he was hired to do. Furthermore, he was the only person at his firm capable of that level of statistical analysis. That is how Mercer knew that Dr. Xanthopoulos was the person speaking with the SEC. Dr. Xanthopoulos told the SEC, "At the time I had thought, that I would be praised for my efforts. I was asked to leave the firm instead. Then, I contacted your SEC office. Nobody else, ever, has quantified Probability of Out-performance at Mercer. I also think, that the whole web of portfolio managers and investment consultants, knows by now that I am a whistle-blower, This, from discussions with Institutional representatives of portfolio management firms, whom I still talk to, and who know and like my quantitative perspective. Mercer knows, that I am THE whistle-blower." A.102.

On April 15, 2018, Dr. Xanthopoulos filed TCR 15238101817. A.64-69. Dr. Xanthopoulos expressed his frustrations with Mercer's alteration of his personnel file. He told the SEC that his HR complaints were removed, leaving no record of his efforts to report the company's wrongdoing

internally. Dr. Xanthopoulos wrote, "I was fired... Then, the company erased from my file, all work and incidences related to my statistical findings." A.114.

On June 26, 2018, Dr. Xanthopoulos filed yet another TCR with the SEC, this time regarding a romantic relationship between two of his supervisors that put Dr. Xanthopoulos in a compromised position. A.107-117. These supervisors asked Dr. Xanthopoulos to perform analyses they then took to another competing bank. *Id.*

Even in explaining these separate but related issues, Dr. Xanthopoulos referred to the fact that he believed he had a claim for wrongful termination pursuant to the Dodd-Frank Act when he stated, "This is on top of the wrongful termination, as the case may be, and/or illegal retaliation under the whistleblower protection of the Dodd-Frank act." A.107-117. Dr. Xanthopoulos expressed his frustrations with Mercer's alteration of his personnel file. He told the SEC that his HR complaints were removed, leaving no record of his efforts to report the company's wrongdoing internally. Dr. Xanthopoulos wrote, "I was fired... Then, the company erased from my file, all work and incidences related to my statistical findings." A.114.

Dr. Xanthopoulos placed his faith in the SEC to protect him, as he concluded the narrative portions of his TCR by reaffirming that "I remain faithful to this course, and will continue to submit evidence of the fact that Mercer, does not care about the negative impact that its ratings have, on the investor public." A.117

### C. When the SEC Failed to Act, Dr. Xanthopoulos Sought Out Other Fora.

Dr. Xanthopoulos eventually became frustrated by the lack of response from the SEC with regards to both his wrongful termination claim and his claims of securities fraud. As a result of this frustration, he began to seek out any other places that would also consider his complaints. A.21-26, A.114-115.

1. <u>Dr. Xanthopoulos Filed a Complaint with OSHA, Pro Se, Who Dismissed His Complaint as Untimely.</u>

He eventually located OSHA's online whistleblower complaint form. He completed this form pro se, alleging retaliation, including an allegation of wrongful termination, pursuant to the employee protection provisions of the Sarbanes-Oxley Act ("SOX"), 18 U.S.C. §1514A, 29 C.F.R. §1980, as amended, with the Occupational Safety and Health Administration ("OSHA") on September 18,2018. A.21-26. The Regional Administrator dismissed the claim as untimely on October 22, 2018.

When initially responding to the dismissal, Dr. Xanthopoulos still did not have an attorney. Accordingly, he did not understand how to properly assert his rights or the reasoning behind the dismissal of his claims. This led to a response that did not fully explain the reasons why the statute should be tolled. A.29-34.

2. <u>Dr. Xanthopoulos Retained Counsel and Appealed to the ARB.</u>

On January 28, 2019, Dr. Xanthopoulos received an Order from the Honorable Francine L. Applewhite, an Administrative Law Judge ("ALJ") at the United States Department of Labor ("DOL") informing him that his wrongful termination claim was untimely. ALJ Applewhite issued an Order to Show Cause stating that Dr. Xanthopoulos had twenty days to provide an explanation as to why the statute should be tolled. A.36-38.

At this point, Dr. Xanthopoulos retained counsel who filed a response with ALJ Applewhite on his behalf on February 12, 2019. A.40-49. On March 22, 2019, ALJ Applewhite summarily denied Dr. Xanthopoulos's request. A.50-52.

3. <u>The ARB denied Dr. Xanthopoulos Appeal Because His Complaints Were Not Precise Enough and Because Dr. Xanthopoulos's Complaints Focused Primarily On the Underlying Securities Fraud.</u>

Upon review of Dr. Xanthopoulos's Request to reinstate his claim with OSHA, the ARB determined that Dr. Xanthopoulos had not properly raised his claims of wrongful termination in another forum. In support of their finding, the ARB stated that Dr. Xanthopoulos's "primary purpose in his SEC filing against Respondent was to right the underlying wrong that he believed respondent committed against shareholders." A. 166. The ARB further stated that two references Dr. Xanthopoulos's made to suing Mercer indicated that he knew that the SEC was not the right forum. *Id.*

## STANDARD FOR REVIEW

The court's standard for review is governed by the standard established in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. *See* 49 U.S.C. § 42121(b)(4)(A); 29 C.F.R. § 1980.112(a). Under that standard, the decision of the ARB will be upheld unless it is "arbitrary, capricious, an abuse of discretion, or otherwise contrary to law." *Williams v. Administrative Review Board*, 376 F.3d 471, 475 (5th Cir. 2004) (quoting *Macktal v. U.S. Dep't of Labor*, 171 F.3d 323, 326 (5th Cir.1999)). Factual findings are subject to substantial evidence review. *Id.* at 475-76. "Under the substantial evidence standard, the ARB's decision must be upheld if, considering all the evidence, a reasonable person could have reached the same conclusion as the ARB." *Id.* at 476. Substantial evidence is "more than a mere scintilla but less than a preponderance." *Id.* (internal quotation marks omitted). The ARB's conclusions of law are reviewed de novo. *Id*.

## SUMMARY OF ARGUMENT

The ARB's finding is not supported by substantial evidence because:

1) Dr. Xanthopoulos's concerns regarding Mercer's fraud did not negate Dr. Xanthopoulos's claims of wrongful termination;

2) Dr. Xanthopoulos's speculation about suing Mercer for sexual harassment in another forum did not negate Dr. Xanthopoulos's claims of wrongful termination; and

3) Dr. Xanthopoulos set forth all the elements to establish a wrongful termination even if he never explicitly requested monetary compensation for his termination.

A. 166-167; *Williams v. Administrative Review Board*, 376 F.3d at 475 (stating that the ARB's decision is only supported by substantial evidence if a reasonable person could have reached that determination). While Dr. Xanthopoulos does not dispute the ARB's impression that the primary focus of his SEC complaints was Mercer's wrong-doing, there is nothing in the ARB's decision or elsewhere to suggest that concern with Mercer's wrong-doing necessarily precludes Dr. Xanthopoulos's claims of wrongful termination. In situations

## **ARGUMENT**

Dr. Xanthopoulos is a whistleblower. While conducting statistical analyses to determine the accuracy of Mercer's clients' investment ratings, Dr. Xanthopoulos demonstrated that there was an inverse correlation between Mercer's ratings and a client's performance. After Dr. Xanthopoulos alerted management to this problem, nothing was done. Dr. Xanthopoulos then began filing complaints with the SEC. The SEC commenced an investigation. To Dr. Xanthopoulos, it appeared obvious that Mercer had inferred his identity. Mercer changed Dr. Xanthopoulos's role and eventually terminated him. A. 63-119. Dr. Xanthopoulos complained about his termination to the SEC as he continued to file TCRs. A. 63-119.

Dr. Xanthopoulos continued filing TCRs with the SEC after the SEC began its investigation into Mercer's fraudulent activities. Dr. Xanthopoulos complained about his termination to the SEC on at least seven different occasions. As a pro se individual completing

TCRs for the SEC, often by hand, Dr. Xanthopoulos's complaints were often lengthy and commingled the topics at issue.

As briefly alluded to in the ARB's decision, Dr. Xanthopoulos complained about and reported multiple transgressions by Mercer but was primarily concerned with three things:

1) <u>Mercer's Fraudulent Activity</u>: Dr. Xanthopoulos demonstrated with statistical certainty that Mercer used a ratings system for investment firms that actively misled investors regarding the success of their ratings. Dr. Xanthopoulos discovered that the system employed by Mercer was actually inversely correlated with investment performance. Moreover, he suspected that there was a pay-to-play arrangement at work with some of the firms that received good ratings but demonstrated poor performance.

2) <u>His Termination</u>: Dr. Xanthopoulos was concerned after he discovered the issues with Mercer's rating system and reported these issues to management and then the SEC that he would be fired. He was correct. Dr. Xanthopoulos complained to the SEC about his termination.

3) <u>Sexual Harassment</u>: Dr. Xanthopoulos was a witness to an intraoffice affair between two of his coworkers and was afraid of the repercussions. For the most part, Dr. Xanthopoulos raised his concerns about the ethical impact of this affair on his workplace. While the SEC does not directly handle sexual harassment claims, Dr. Xanthopoulos's raising of this issue at all suggests that he did not know the proper forum for raising any of his concerns.

The ARB, in reaching its determination, pulled two stray comments that Dr. Xanthopoulos made about suing with regards to the sexual harassment that he had experienced and used it as the primary evidence for its determination that Dr. Xanthopoulos knew that the SEC was not the proper agency to investigate his termination. A. 166.

Rather than consider whether Dr. Xanthopoulos had fully set forth claims of wrongful termination and whether his raising of those claims repeatedly in both standard form boxes and in narrative report sections evidenced a belief that the SEC would investigate his complaints, the ARB chose to hone in on Dr. Xanthopoulos's discussion of suing about his sexual harassment claims. The ARB stated:

> In Complainant's last report to the SEC (which would have been untimely as filed on June 26, 2018), Complainant stated he was "currently investigating my options, regarding this possible case of sexual harassment against me. This on top of the wrongful termination, as the case may be, and/or illegal retaliation under the whistleblower protection of the Dodd-Frank act. It is must [sic], too much, all at once. I will keep your Office posted of my legal actions as needed." This language concedes Complainant's awareness (1) that he must seek further legal action, including the whistleblower complaint, in some forum other than the SEC and (2) that the SEC is not investigating these matters.

A. 166. This one line regarding sexual harassment from the last report filed by Dr. Xanthopoulos is inexplicably attributed to the whistleblower complaint (and implicitly Dr. Xanthopoulos's wrongful termination claim) also without further explanation by the ARB.

## A. **Dr. Xanthopoulos Set Forth All Elements of a SOX Wrongful Termination Claim Before the SEC.**

Dr. Xanthopoulos alleged throughout his complaints to the SEC that he had:

1) engaged in protected activity when he reported Mercer's involvement with securities fraud to the SEC triggering an investigation;

2) that Mercer knew he had engaged in protected activity;

3) that initially his role was changed and then he was ultimately terminated for engaging in protected activity.

A.56-119.

Ordinarily, when a plaintiff or petitioner proceeds in the proper forum pro se, their allegations must be construed liberally, as pleadings filed by pro se petitioners are held to a less stringent standard than formal pleadings drafted by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Not only did the ARB fail to provide any leeway for Dr. Xanthopoulos's *pro se* status when evaluating whether he had intended to raise a claim of wrongful termination with the SEC, the ARB arbitrarily decided that Dr. Xanthopoulos must explicitly ask for "reinstatement, back pay, or other damages associated with the termination" in order to demonstrate that he was asserting a valid claim. A. 165-166. The ARB cites no authority indicating that a pro se litigant must make such a request in any forum in order for their complaint to be upheld. *Id.* Dr. Xanthopoulos laid out all of the elements necessary to constitute a wrongful termination claim in violation of SOX whistleblower provisions. TCRs submitted to the SEC bear witness to the fact that he did not understand the limitations of the SEC's investigation.

A statutory filing period should be tolled where a complainant mistakenly files a complaint that raises the statutory claim at issue in the wrong forum, particularly when the complainant is without the assistance of legal counsel. *See Taylor v. Express One Int'l., Inc.*, 2001-AIR-2 (ALJ Feb. 15, 2002) (the ALJ held that filing the complaint with the wrong agency (the FAA) was a sufficient basis for tolling the time limit for filing a complaint under AIR21)).

Congress never intended to bar suits where "[p]etitioner ... did not sleep on his rights" but brought an action within the statutory period asserting the same claim in an improper venue. *Turgeau v. Administrative Review Bd.*, 446 F.3d 1052, 1058-1059 (10th Cir., 2006) (citing *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 428, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965)). Dr. Xanthopoulos never intended to forfeit any rights and the ARB provided no suggestion that he did in their decision. Dr. Xanthopoulos held a good-faith belief that the TCRs filed with the SEC were

sufficient to set forth a claim for retaliation and wrongful termination based on his whistle blower status. The form itself asked about retaliation and for details regarding any retaliation the same way that it asks about fraudulent activities and in the same manner that it provides information about whistleblower rewards. A.89-90, A.101-102, A.114-115. The ARB accepted Dr. Xanthopoulos's checking of the whistleblower reward box as evidence that Dr. Xanthopoulos sought a whistleblower reward but found that a check in an adjacent box indicating that he was relatiated against was evidence that Dr. Xanthopoulos did not believe that the SEC would investigate his termination. In fact, the ARB quoted the whistleblower reward language printed in the question where Dr. Xanthopoulos typed merely, "yes" as evidence that Dr. Xanthopoulos intended to receive only a reward but did not accept the descriptions that Dr. Xanthopoulos provided regarding the retaliation that he endured as evidence that he similarly intended for these allegations to be considered. A.165-166.

The Supreme Court "ha[s] allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 & n. 3, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (emphasis added) *quoted in Turgeau v. A.R.B.*, 446 F.3d at 1059. Dr. Xanthopoulos's TCRs laid out all elements necessary for a retaliation and wrongful termination claim thoroughly and repeatedly to the SEC. Furthermore, Dr. Xanthopoulos's filings repeatedly made clear he believed he was filing an action for retaliation and wrongful termination. The ARB found that his wrongful termination complaints were insufficient because they did not precisely enough seek a remedy, specifically monetary damages.

On at least seven different occasions, Dr. Xanthopoulos filed what he believed to be an actionable claim for retaliation and wrongful termination with the SEC: two when he correctly

believed that his TCR filing made his termination imminent, one on the day he was terminated, and four subsequent TCRs that referred to what he perceived as his ongoing retaliatory whistleblower termination claims. (Exs. F-L). It was only when Dr. Xanthopoulos grew frustrated with what he perceived as the SEC's lack of response to Mercer's wrongdoing that he attempted to file his claim in another forum.

In totality, the common themes that emerge again and again are:

1) Xanthopoulos's willingness to disclose his employer's wrongdoing to the SEC,

2) Xanthopoulos's ultimately prescient fear of retaliation for these disclosures, and

3) Xanthopoulos's abiding faith that he would be protected from wrongful discharge by this same federal agency as part of their overall investigation into his employer's illegal acts. While Xanthopoulos's reliance on the SEC was technically inaccurate, he should not have had his entire claim dismissed based on a good faith mistake made without the benefit of legal counsel.

## B. Because Dr. Xanthopoulos Raised His Claim in the Wrong Forum, the Statute Should Be Tolled.

In situations where a petitioner, like Dr. Xanthopoulos, was pro se and attempted to file identical claims in the wrong forum, the ARB has allowed for tolling of the statute of limitations.

In *Miller v. Basic Drilling Co*., ARB No. 05-111, ALJ No. 2005-STA-20 (ARB Aug. 30, 2007), a pro se plaintiff attempted to file his complaint with four improper state agencies before he was finally told to file a complaint with OSHA. As in the case at bar, Miller's claim came before the ARB after "the ALJ concluded that [plaintiff's] complaint was untimely filed, he did not specifically address the equitable tolling factors." *Miller,* ARB No. 05-111 (Aug. 2007), at pg. 4. The ARB held that this failure constituted legal error and remanded the case back to the ALJ, as the ARB should have been done for Dr. Xanthopoulos.

Here, the ARB, like the ALJ before them, did not fully consider Dr. Xanthopoulos's claim that he had preserved his rights in another forum. Dr. Xanthopoulos furnished proof of complaints of wrongful termination. The ARB dismissed these complaints solely because Dr. Xanthopoulos's "primary concern" was Mercer's fraud. Such a finding is inconsistent with equitable tolling principals - which also do not prohibit an individual from filing multiple related complaints in one document. See *Miller*, ARB No. 05-111 (Aug. 2007), supra; *Hillis v. Knochel Bros.*, ARB Nos. 03-136, 04-081, 148; ALJ No. 02-STA-050, slip op. at 7-9 (ARB Mar. 31, 2006)(tolling the statute of limitations from the time the plaintiff filed in the wrong forum until he was told it was the wrong forum).

Consistent with equitable tolling principles, Dr. Xanthopoulosis's pro se attempts to preserve his rights should have been recognized by the ARB, who instead claimed that Dr. Xanthopoulos's concerns about securities fraud and an inappropriate office relationship somehow rendered co-existing complaints of wrongful termination invalid. The relevant decisions of this Court and the ARB demonstrate that a party, especially one filing pro se, should be given the benefit of having the statute of limitations tolled when they made good-faith mistakes in bringing their claims in the wrong forum.

Dr. Xanthopoulos did not merely sit on his rights and allow the statute to expire while taking no action. He simply made a technical error in navigating the complex federal bureaucracy governing employment claims. To permanently bar his claims under these circumstances would be in contravention of the established precedent cited above, as well as basic notions of fair play and equity.

**<u>CONCLUSION</u>**

For the foregoing reasons, this Court should reverse the United States Department of Labor's decision to affirm the ALJ's Order Dismissing Appellant's Complaint.

Dated:      November 16, 2020                                Respectfully submitted,

            Park Ridge, Illinois                                /S George S. Bellas

                                                                George S. Bellas
                                                                Bellas & Wachowski

                                                                Attorneys for Appellant
                                                                15 N. Northwest Highway
                                                                Park Ridge, Illinois 60068
                                                                (847)-823-9032

                                                                george@bellas-wachowski.com

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiff-Appellant, Apostolos Xanthopoulos,

furnishes the following in compliance with F.R.A.P. Rule 32(a)(7):

I hereby certify that this brief conforms to the rules contained in F.R.A.P. Rule 32(a)(7)

for a brief produced with a proportionally spaced font. The length of this brief is ___ words.

Dated:     November 16, 2020         <u>/S/ George S. Bellas</u>

           Park Ridge, Illinois           George S. Bellas
                                                  Attorney for Appellant

**PROOF OF SERVICE**

The undersigned, counsel for the Plaintiff-Appellant, Apostolos Xanthopoulos, hereby certifies that on November 16, 2020, two copies of the Brief and one copy of the Separate Appendix as well as a digital version containing the brief, were delivered using CM/ECF system to counsel for the Defendant-Appellee, United States Department of Labor, and Intervenor-Appellee, Marsh & McLennan Companies, Inc., doing business as Mercer Investment Consulting, LLC.

## REQUIRED SHORT APPENDIX

### Contents

Docket Entries for Previous Proceedings …………………………………………………. S.A. 1

ALJ's Order Dismissing Complaint …………………………………………………… S.A. 2

ARB's Decision and Order …………………………………………………………... S.A. 8

### CERTIFICATE

Pursuant to Circuit Rule 30(d), I hereby certify that this short appendix includes all the

materials required by Circuit Rules 30(a) and (b).


Dated:      November 16, 2020                        /S/ George S. Bellas

                 Park Ridge, Illinois                           George S. Bellas
                                                         Attorney for Appellant

## SEPARATE APPENDIX
## CERTIFICATE OF REQUIRED MATERIALS

Pursuant to Circuit Rule 30(d), the undersigned counsel hereby certifies that the Required

Short Appendix to the Appellant's Brief contains all of the materials required by subsection (a)

of Circuit Rule 30 and the Separate Appendix contains all of the materials required by subsection

(b) of Circuit Rule 30.


Dated:    November 16, 2020                        <u>/S George S. Bellas</u>

                Park Ridge, Illinois                       George S. Bellas
                                                   Attorney for Appellant

## SEPARATE APPENDIX

## TABLE OF CONTENTS

Complainant's Brief in Support of His Petition to Reinstate Complainant's Whistleblower Claim for Wrongful Termination ... 1

    A.  Complainant's Whistleblower Complaint dated September 18, 2018 ... 20

    B.  Complainant's Objection to the Secretary's Finding and Request for a Hearing dated November 15, 2018 ... 27

    C.  ALJ's Order to Show Cause entered January 18, 2019 ... 35

    D.  Complainant's Response to Order to Show Cause with Enclosures dated February 13, 2019 ... 39

    E.  ALJ's Order Dismissing Complaint entered March 22, 2019 ... 49

    F.  United States Securities and Exchange Commission: Form TCR filed on March 3, 2014 ... 56

    G.  United States Securities and Exchange Commission: Form TCR filed on August 13, 2015 ... 63

    H.  United States Securities and Exchange Commission: Form TCR filed on October 3, 2017 ... 70

    I.  TCR1516139338494 filed on January 16, 2018 ... 75

    J.  TCR15180084555 filed on February 7, 2018 ... 81

    K.  TCR15207635859 filed on March 10, 2018 ... 93

    L.  United States Securities and Exchange Commission: Form TCR filed on June 26, 2018 ... 106

Respondent's Brief ... 120

    A.  Press Release: Transamerica Entities to Pay $97 Million to Investors Relating to Errors in Quantitative Investment Models ... 138

Complainant's Reply Brief in Further Support of His Petition to Reinstate Complainant's Whistleblower Claim for Wrongful Termination ... 141

ARB's Decision and Order ... 163

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

**United States Court of Appeals**
**For the Seventh Circuit**

Apostolos Xanthopoulos v. United States Department of Labor

USCA No. 20-2064 (7th Cir.)
ALJ Case No. 2019-SOX-00008
ARB Case No. 2019-045

**DOCKET ENTRIES OF PREVIOUS PROCEEDINGS**

**Proceedings Before the Administrative Law Judge ("ALJ"): Case No. 2019-SOX-00008**

1.  Complainant Apostolos Xanthopoulos's Whistleblower Complaint filed September 18, 2018

2.  Secretary's Findings filed October 22, 2018

3.  Complainant's Objection to Secretary's Findings and Request for Hearing filed November 15, 2018

4.  ALJ's Order to Show Cause entered January 18, 2019

5.  Complainant's Response to Order to Show Cause with Enclosures filed February 13, 2019

6.  ALJ's Order Dismissing Complaint entered March 22, 2019

**Proceedings Before the Administrative Review Board ("ARB"): Case No. 2019-0045**

7.  Complainant's Notice of Appearances filed on April 1, 2019

8.  Complainant's Petition for Review filed April 1, 2019

9.  Complainant's Brief in Support of Petition to Reinstate Complainant's Whistleblower Claim for Wrongful Termination filed May 6, 2019

10. Respondent's Brief filed August 2, 2019

11. Complainant's Reply Brief in Further Support of His Petition to Reinstate Complainant's Whistleblower Claim for Wrongful Termination filed September 27, 2019

12. ARB's Decision and Order entered June 29, 2019.

**U.S. Department of Labor**  Office of Administrative Law Judges
800 K Street, NW
Washington, DC 20001-8002

(202) 693-7300
(202) 693-7365 (FAX)



**Issue Date: 22 March 2019**

Case Number:  **2019-SOX-00008**

In the Matter of:

**APOSTOLOS XANTHOPOULOS**
  Complainant

  v.

**MARSH & MCLENNAN COMPANIES, INC.**
**d/b/a MERCER INVESTMENT CONSULTING**
  Respondent

<u>**ORDER DISMISSING COMPLAINT**</u>

   This matter arises under the employee protection provisions of the Sarbanes-Oxley Act ("SOX" or "the Act"), 18 U.S.C. §1514A, 29 C.F.R. §1980, as amended.

**Background**

   Apostolos Xanthopoulos ("Complainant") filed a complaint under the Act with the U.S. Department of Labor, Occupational Safety and Health Administration ("OSHA"). The complaint alleged the Complainant was terminated, laid off, demoted, reduced hours, negative performance evaluation, harassed, and intimidated by his employer, Mercer Investment Consulting ("Respondent") for conducting statistical studies which showed that the ratings assigned to portfolio management strategies could have resulted in immediate and substantial losses to plan sponsors and other clients.

   On October 22, 2018, the OSHA Regional Administrator issued findings in which the complaint was dismissed as untimely. The findings state that the Complainant's employment was terminated on October 3, 2017 and the instant complaint was filed on September 18, 2018 – not within the 180-day statutory filing period. The findings further stated that no reason or evidence to support equitable tolling was provided.

   The Complainant submitted an "Objection to Findings …Request for Hearing by Administrative Law Judge", dated November 15, 2018 and received, on November 26, 2018. He objects to the dismissal of the complaint.

On January 18, 2019, I issued an *Order to Show Cause* ("Order"), explaining that to be timely, a SOX retaliation claim must be filed within 180 days after an alleged violation occurs or after the date on which the employee (complainant) became aware of the alleged violation. 29 C.F.R. §1980.103(d). In addition, I explained that the Complainant has the burden of showing that his complaint was timely filed or, in the absence of timely filing, that equitable tolling of the applicable time limitation provision should occur. The Order instructed the Complainant to submit a written response within twenty days addressing why the equitable tolling principles should apply and the matter not be dismissed.

On February 14, 2019, the Complainant's Response to Order to Show Cause was received.[1] The response asserts that the Complainant believed that: (1) "his SEC claims included wrongful termination" and (2) his "attempts to exercise his rights warrant a tolling of the statute." Attached was a copy of the whistleblower complaint submitted to OSHA on September 18, 2018, as well as copies of six Form TCR - Tip, Complaint or Referral submitted to the Securities and Exchange Commission ("SEC").

## Discussion

To be timely, a SOX retaliation claim must be filed within 180 days after an alleged violation occurs or after the date on which the employee (complainant) became aware of the alleged violation. 29 C.F.R. §1980.103(d). In determining whether a statute of limitations for whistleblower claims should be tolled, the Administrative Review Board ("ARB") has recognized four principal and nonexclusive "situations in which equitable modification may apply: (1) when the defendant has actively misled the plaintiff regarding the cause of action; (2) when the plaintiff has in some extraordinary way been prevented from filing his action; (3) when the plaintiff has raised the precise statutory claim in issue but has done so in the wrong forum, and (4) where the employer's own acts or omissions have lulled the plaintiff into foregoing prompt attempts to vindicate his rights. *Selig v. Aurora Flight Sciences*, ARB No.10-072, ALJ No. 2010-AIR-00010, slip op. at 3-4 (ARB Jan. 28, 2011). The ARB has not found these situations to be exclusive, and an inability to satisfy one or more of the four prongs is not necessarily fatal. *Id.* at 4. Furthermore, when the Complainant is *pro se*, the ARB has stated that Administrative Law Judges must "construe complaints and papers filed by *pro se* complainants 'liberally in deference of their lack of training in the law' with a degree of adjudicative latitude."[2]

The Complainant's argument and documentation of filings with the SEC have been considered in their entirety and even construing the record "liberally in deference" to an unrepresented status, I still find them insufficient to avoid dismissal. There is no showing that

---

[1] The Response to Order to Show Cause, dated February 13, 2019, was submitted by Bellas & Wachowski, Attorneys at Law, and digitally signed by Jillian Tattersall. Neither Ms. Tattersall nor Bellas & Wachowski have entered their appearance as Attorney for Complainant. Moreover, no service sheet is attached to the response, indicating service on parties.

[2] *Wyatt v. Hunt Transport*, ARB No. 11-039, ALJ No. 2010-STA-69, slip op. at 2 (ARB Sept. 21, 2012), *quoting Trachman v. Orkin Exterminating Co. Inc.*, ARB No. 01-067, ALJ No. 2000-TSC-3, slip op. at 6 (ARB Apr. 25, 2003).

- 2 -

the Complainant raised his claim in a wrong forum, was misled, prevented from, or was lulled into foregoing his rights

## ORDER

In light of the foregoing discussion, I find that the Complainant has failed to timely file a complaint alleging retaliation in violation of the Sarbanes-Oxley Act, and has failed to show cause as to why the case should not be dismissed. Accordingly, this case is hereby **DISMISSED** as untimely pursuant to 18 U.S.C. §1514A, 29 C.F.R. §1980, as amended.

**SO ORDERED**:



Digitally signed by Francine L.
Applewhite
DN: CN=Francine L. Applewhite,
OU=Administrative Law Judge, O=US
DOL Office of Administrative Law
Judges, L=Washington, S=DC, C=US
Location: Washington DC

**FRANCINE L. APPLEWHITE**
Administrative Law Judge

- 3 -

Short Appendix Page 4

**NOTICE OF APPEAL RIGHTS:** This Decision and Order will become the final order of the Secretary of Labor unless a written petition for review is filed with the Administrative Review Board ("the Board") within 10 business days of the date of this decision. The Board's address is: Administrative Review Board, U.S. Department of Labor, Suite S-5220, 200 Constitution Avenue, NW, Washington DC 20210, for traditional paper filing. Alternatively, the Board offers an Electronic File and Service Request (EFSR) system. The EFSR for electronic filing (eFile) permits the submission of forms and documents to the Board through the Internet instead of using postal mail and fax. The EFSR portal allows parties to file new appeals electronically, receive electronic service of Board issuances, file briefs and motions electronically, and check the status of existing appeals via a web-based interface accessible 24 hours every day. No paper copies need be filed.

An e-Filer must register as a user, by filing an online registration form. To register, the e-Filer must have a valid e-mail address. The Board must validate the e-Filer before he or she may file any e-Filed document. After the Board has accepted an e-Filing, it is handled just as it would be had it been filed in a more traditional manner. e-Filers will also have access to electronic service (eService), which is simply a way to receive documents, issued by the Board, through the Internet instead of mailing paper notices/documents.

Information regarding registration for access to the EFSR system, as well as a step by step user guide and FAQs can be found at: https://dol-appeals.entellitrak.com. If you have any questions or comments, please contact: Boards-EFSR-Help@dol.gov

The date of the postmark, facsimile transmittal, or e-filing will be considered to be the date of filing. If the petition is filed in person, by hand-delivery or other means, the petition is considered filed upon receipt. The petition for review must specifically identify the findings, conclusions or orders to which exception is taken. Any exception not specifically urged ordinarily will be deemed to have been waived by the parties.

At the same time that you file your petition with the Board, you must serve a copy of the petition on (1) all parties, (2) the Chief Administrative Law Judge, U.S. Dept. of Labor, Office of Administrative Law Judges, 800 K Street, NW, Suite 400-North, Washington, DC 20001-8001, (3) the Assistant Secretary, Occupational Safety and Health Administration, and (4) the Associate Solicitor, Division of Fair Labor Standards. Addresses for the parties, the Assistant Secretary for OSHA, and the Associate Solicitor are found on the service sheet accompanying this Decision and Order.

If filing paper copies, you must file an original and four copies of the petition for review with the Board, together with one copy of this decision. In addition, within 30 calendar days of filing the petition for review you must file with the Board an original and four copies of a supporting legal brief of points and authorities, not to exceed thirty double-spaced typed pages, and you may file an appendix (one copy only) consisting of relevant excerpts of the record of the proceedings from which the appeal is taken, upon which you rely in support of your petition for review. If you e-File your petition and opening brief, only one copy need be uploaded.

Short Appendix Page 5

Any response in opposition to a petition for review must be filed with the Board within 30 calendar days from the date of filing of the petitioning party's supporting legal brief of points and authorities. The response in opposition to the petition for review must include an original and four copies of the responding party's legal brief of points and authorities in opposition to the petition, not to exceed thirty double-spaced typed pages, and may include an appendix (one copy only) consisting of relevant excerpts of the record of the proceedings from which appeal has been taken, upon which the responding party relies. If you e-File your responsive brief, only one copy need be uploaded.

Upon receipt of a legal brief filed in opposition to a petition for review, the petitioning party may file a reply brief (original and four copies), not to exceed ten double-spaced typed pages, within such time period as may be ordered by the Board. If you e-File your reply brief, only one copy need be uploaded.

If a timely petition for review is not filed, or the Board denies review, this Decision and Order will become the final order of the Secretary of Labor. *See* 29 C.F.R. §§ 24.109(e) and 24.110.

Short Appendix Page 6

# SERVICE SHEET

Case Name: **MERCER_INVESTMENT_CO_v_XANTHOPOULOS_**

Case Number: **2019SOX00008**

Document Title: **ORDER DISMISSING COMPLAINT**

I hereby certify that a copy of the above-referenced document was sent to the following this 22nd day of March, 2019:

 Digitally signed by DELANNIE HONESTY
DN: CN=DELANNIE HONESTY,
OU=LEGAL ASSISTANT, O=US DOL Office
of Administrative Law Judges,
L=Washington, S=DC, C=US
Location: Washington DC

**DELANNIE HONESTY**
LEGAL ASSISTANT

Associate Solicitor
Division of Fair Labor Standards
U. S. Department of Labor
Room N-2716, FPB
200 Constitution Ave., N.W.
WASHINGTON DC 20210
        *{Hard Copy - Regular Mail}*

. .

Mercer Investment Consulting
155 North Wacker Drive, Suite 1500
CHICAGO IL 60606
        *{Hard Copy - Regular Mail}*

. .

Director
Directorate of Whistleblower Protection Programs
U S Department of Labor, OSHA
Room N 4618 FPB
200 CONSTITUTION AVE NW
WASHINGTON DC 20210
        *{Hard Copy - Regular Mail}*

Marsh & McLennan Companies, Inc. dba Mercer Inve
1166 Ave of the Americas
NEW YORK NY 10036
        *{Hard Copy - Regular Mail}*

Administrative Review Board
U. S. Dept. of Labor
Suite S-5220, FPB
200 Constitution Ave., N.W.
WASHINGTON DC 20210
        *{Hard Copy - Regular Mail}*

Apostolos Xanthopoulos, PhD
1218 West Robin Lane
MOUNT PROSPECT IL 60056
        *{Hard Copy - Regular Mail}*



IN THE MATTER OF:

APOSTOLOS XANTHOPOULOS,    ARB CASE NO.  2019-0045

      COMPLAINANT,    ALJ CASE NO.  2019-SOX-00008

  v.    DATE:    June 29, 2020

MARSH & MCCLENNAN COMPANIES,
INC. d/b/a MERCER INVESTMENT
CONSULTING,

      RESPONDENT.

Appearances:

*For the Complainant:*
    Jillian Tattersall, Esq. and George Bellas, Esq.; *Bellas & Wachowski*;
    Park Ridge, Illinois

*For the Respondent:*
    Edward T. Ellis, Esq. and Alexa J. Laborda Nelson, Esq.; *Littler
    Mendelson, P.C.*; Philadelphia, Pennsylvania

Before: Thomas H. Burrell, *Acting Chief Administrative Appeals Judge*,
James A. Haynes and Heather C. Leslie, *Administrative Appeals Judges*

## DECISION AND ORDER

PER CURIAM. The Complainant, Apostolos Xanthopoulos, filed a retaliation complaint under Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002, Title VIII of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A (2010) (SOX) and its implementing regulations, 29 C.F.R. Part 1980 (2019). Complainant alleged that his former employer violated whistleblower protection provisions by

discharging Complainant on October 3, 2017, because he engaged in protected activity.

Complainant filed his complaint of unlawful retaliation on September 18, 2018. OSHA dismissed the complaint because it was untimely. Complainant requested a hearing before an Administrative Law Judge (ALJ). On March 22, 2019, after receiving Complainant's response to an order to show cause for untimeliness, the ALJ dismissed the complaint, holding that Complainant failed to timely file a complaint alleging retaliation in violation of the SOX act and failed to show that equitable relief was warranted. Complainant filed a petition requesting that the Administrative Review Board (ARB or the Board) review the ALJ's order. We affirm.

### JURISDICTION AND STANDARD OF REVIEW

The ARB has jurisdiction to review the ALJ's SOX decision pursuant to Secretary's Order No. 01-2020 (Delegation of Authority and Assignment of Responsibility to the Administrative Review Board (Secretary's discretionary review of ARB decisions)), 85 Fed. Reg. 13,186 (Mar. 6, 2020). The ARB reviews all conclusions of law de novo. *Micallef v. Harrah's Rincon Casino & Resort*, ARB No. 2016-0095, ALJ No. 2015-SOX-00025, slip op. at 3 (ARB July 5, 2018).

### DISCUSSION

Section 806 prohibits certain covered employers from discharging, demoting, suspending, threatening, harassing, or in any other manner discriminating against employees who provide information to a covered employer or a federal agency or Congress regarding conduct that the employee reasonably believes constitutes a violation of 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire, radio, TV fraud), 1344 (bank fraud), or 1348 (securities fraud), or any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders. 18 U.S.C. § 1514A(a)(1). SOX complaints must be filed "not later than 180 days after the date on which the violation occur[red], or after the date on which the employee became aware of the violation." 18 U.S.C. §1514A(b)(2)(D).

In the case at bar, Complainant was fired on October 3, 2017, and filed his complaint 350 days later, on September 18, 2018. As the ALJ held, the complaint was untimely. Further, the ALJ found no grounds for equitable modification. We agree with the ALJ that dismissing the complaint was in accordance with the law.

On appeal, Complainant argues that filings he made with the SEC warrant equitable modification because they constitute SOX claims mistakenly filed in the wrong forum. He asserts that he believed that the SEC would investigate his discrimination claim in regard to his discharge. In his reply brief, he asserted that he did not become aware that he should file in a different forum until an August 2018 Transamerica article was published which clarified for him that the SEC would not investigate his claims regarding his discharge.

We are not persuaded by Xanthopoulos' argument that he is entitled to equitable relief from the 180-day limitations period. When deciding whether equitable modification is warranted, the Board is guided by the principles applied in *School Dist. of the City of Allentown v. Marshall*, 657 F.2d 16, 20 (3d Cir. 1981) in which the United States Court of Appeals for the Third Circuit recognized three appropriate situations for tolling: "(1) [when] the defendant has actively misled the plaintiff respecting the cause of action, (2) the plaintiff has in some extraordinary way been prevented from asserting his rights, or (3) the plaintiff has raised the precise statutory claim in issue but has mistakenly done so in the wrong forum." *DeFazio v. Sheraton Steamboat Resorts & Villas*, ARB No. 2011-0063, ALJ No. 2011-SOX-00035, slip op. at 3 (ARB Oct. 23, 2012). The Board has recognized a fourth situation in which equitable tolling may be warranted where the employer's acts or omissions have lulled the complainant into foregoing prompt action to vindicate his rights.[1] *Id.* at 3 n.5 (citing *Hyman v. KD Res.*, ARB No. 09-076, ALJ No 2009-SOX-020, slip op. at 7 (ARB Mar. 21, 2010)).

While Complainant informed the SEC as a part of his ongoing filings that he had been fired, his filings do not constitute the "precise statutory claim" "mistakenly" filed in the wrong forum. Specifically, Complainant's filings with the SEC do not set forth a SOX retaliation or discrimination claim seeking SOX remedies. Some of his filings do not mention his termination. In other filings, Complainant claims that his termination was retaliatory but he did not seek employee-based remedies such as reinstatement, back pay, or other damages associated with the termination. Instead, Complainant makes a vague reference to serving the interest of the investing public.[2] The only monetary remedy mentioned in the filings relates to seeking a monetary award through the SEC's Whistleblower

---

[1] The record falls short of the kind of evidence needed to support an equitable tolling claim of being "lulled" into foregoing prompt action, and other than one vague reference in his petition for review, Xanthopoulos has not argued such a claim.

[2] Complainant's Brief, Exhibit I. This filing indicates it was printed on January 16, 2018.

Program.[3] The SEC "is authorized by Congress to provide monetary awards [between 10% and 30% of the money collected] to eligible individuals who come forward with high-quality original information that leads to a Commission enforcement action in which over $1,000,000 in sanctions is ordered." 17 C.F.R. § 240.21F-1 to F-14; see also https://www.sec.gov/whistleblower.

It is clear from Complainant's filings that he wanted the SEC to address the underlying problems Complainant identified. In one of his filings, Complainant stated:

> Perhaps it is time for me, to consider some suing against Mercer, no? . . . [A remedy for] [t]he myriad of insults, hostile environment, financial hardship, and internal turmoil that I have experienced, would be nothing, to finding out that your Respected Commission, had actually done something to stop Mercer from one or all of its questionable practices. I remain faithful to this course, and will continue to submit evidence of the fact that Mercer, does not care about the negative impact that its ratings have, on the investor public. . .

Complainant's Brief, Exhibit L at 8-9. Again, this statement shows that Complainant's primary purpose in his SEC filing against Respondent was to right the underlying wrong that he believed Respondent committed against shareholders, not to provide make-whole remedies concerning his employment.

In Complainant's last report to the SEC (which would have been untimely as filed on June 26, 2018), Complainant stated he was "currently investigating my options, regarding this possible case of sexual harassment against me. This on top of the wrongful termination, as the case may be, and/or illegal retaliation under the whistleblower protection of the Dodd-Frank act. It is must [sic], too much, all at once. I will keep your Office posted of my legal actions as needed."[4] This language concedes Complainant's awareness (1) that he must seek further legal action, including the whistleblower complaint, in some forum other than the SEC and (2) that the SEC is not investigating these matters.[5]

---

[3]     Complainant's Brief, Exhibit J at 9, Exhibit K at 9, Exhibit L at 9.

[4]     Complainant's Brief, Exhibit L at 8.

[5]     This SEC filing occurred before August 2018, when the Transamerica article that Complainant has asserted sparked his knowledge was published, and thus nullifies his argument that the article allegedly prompted him to seek recourse in another forum. Complainant's reply at 1, 2, 4, 5, 11.

Nothing in Complainant's SEC filings indicates that Complainant sought or wanted the SEC to investigate his discharge or restore his employment or wages to him. Thus, his SEC filings cannot constitute the precise statutory claim as contemplated by equitable principles. Further, it is clear that Complainant did not mistakenly file a SOX whistleblower claim with the SEC, but deliberately filed with the SEC a non-SOX claim for the purpose of remedying Respondent's wrongful conduct that he complained of and seeking a whistleblower award. Again, Complainant's filings show that he was aware that he had other potential claims against Respondent for Respondent's wrongful actions against him.[6] It was incumbent upon him to proceed on that awareness in a timely manner.

## ORDER

Accordingly, we **AFFIRM** the ALJ's Order Dismissing the Complaint.

**SO ORDERED.**

---

[6]     Indeed, in Complainant's November 15, 2018 Request for a Hearing, Complainant told the OALJ that "[a] kind gentleman who is part of AHEPA, an organization [Complainant] was also a member of, had suggested to [him], winter of 2018, to contact OSHA" about his discharge. Objections and Request for a Hearing at 1.

# ADMINISTRATIVE REVIEW BOARD
## Certificate of Service

**ARB CASE NAME:** *Apostolos Xanthopoulos v. Marsh & McLennan Companies, Inc. d/b/a Mercer Investment Consulting*

**ARB CASE NO. :** **2019-0045**

**ALJ CASE NO. :** **2019-SOX-00008**

**DOCUMENT :** **ORDER**

**A copy of the above referenced document was sent to the following persons on**

**June 29, 2020**

_Aubrey Gordon_

**CERTIFIED MAIL**

Apostolos Xanthopoulos, PhD
1218 West Robin Lane
Mount Prospect, IL 60056

Jillian Tattersall, Esq.
George S. Bellas, Esq.
15 N. Northwest Highway
Park Ridge, IL 60068

Mercer Investment Consulting
155 North Wacker Drive, Suite 1500
Chicago, IL 60606

Marsh & McLennan Companies, Inc.
d/b/a Mercer Investment
1166 Ave of the Americas
New York, NY 10036

Edward T. Ellis, Esq.
Alexa Laborda Nelson, Esq.
1601 Cherry Street
Suite 1400
Philadelphia, PA  19102

**<u>REGULAR MAIL:</u>**

Associate Solicitor
U.S. Department of Labor/SOL
200 Constitution Avenue, NW
Room N-2716, FPB
Washington, DC  20210

Directorate of Enforcement Programs
U.S. Department of Labor/OSHA
200 Constitution Avenue, NW
Room N-4618, FPB
Washington, DC  20210

Hon. Francine L. Applewhite
Administrative Law Judge
Office of Administrative Law Judges
800 K Street, NW, Suite 400
Washington, DC  20001-8002

Hon. Stephen R. Henley
Chief Administrative Law Judge
Office of Administrative Law Judges
800 K Street, NW, Suite 400
Washington, DC  20001-8002



# PROCESSING OF APPEALS AND CORONAVIRUS

The Administrative Review Board (ARB) is closely monitoring the COVID-19 virus and the potential impact on the processing of appeals before the Board. All parties with appeals before the board are encouraged to utilize the Board's Electronic File and Service Request (EFSR) system to ensure the timely processing of their appeals. Documents that are not filed through the EFSR portal may be delayed in processing.

The EFSR portal allows parties to file new appeals electronically, receive electronic service of Board issuances, file briefs and motions electronically, and check the status of existing appeals through an online interface that is accessible 24 hours every day.

The EFSR system is open to any party to an appeal before the Board. An e-Filer must register as a user and must be validated by the Board before e-filing any document. An e-Filer will complete an online registration form. A valid email address is required to register as an e-Filer. Once registered, an e-Filer will be able to use the EFSR for electronic filing (e-File), which is the submission of forms and documents to the Board through the internet instead of using postal mail and fax. After the Board has accepted an e-Filing, it is handled just as it would be had it been filed in paper. e-Filers will also have access to electronic service (e-Service), which is simply a way to receive documents issued by the Board through the Internet in lieu of mailing paper notices/documents.

Information regarding registration for access to the EFSR system, as well as links to the step-by-step user guide and FAQs can be found at https://dol-appeals.entellitrak.com.

If you have any questions or comments, please contact us at Boards-EFSR-Help@dol.gov.