**No. 20-2604**

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT
_____

APOSTOLOS XANTHOPOULOS,
Petitioner,

v.

UNITED STATES DEPARTMENT OF LABOR,
ADMINSTRATIVE REVIEW BOARD
Respondent,

MARSH & MCLENNAN COMPANIES, INC d/b/a
MERCER INVESTMENT CONSULTING,
Intervening Respondent
_____

On Petition for Review of the Final Decision and Order of the
United States Department of Labor's Administrative Review Board
_____

**BRIEF FOR THE SECRETARY OF LABOR**
_____

KATE S. O'SCANNLAIN
Solicitor of Labor

JENNIFER S. BRAND
Associate Solicitor

SARAH K. MARCUS
Deputy Associate Solicitor

MEGAN E. GUENTHER
Counsel for Whistleblower Programs

ANNE E. BONFIGLIO
Attorney
U.S. Department of Labor
Office of the Solicitor
200 Constitution Ave. NW, N-2716
Washington, DC  20210
(202) 693-5561
Bonfiglio.Anne.E@dol.gov

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................... iv

JURISDICTIONAL STATEMENT .........................................................1

STATEMENT OF THE ISSUES...............................................................2

STATEMENT OF THE CASE...................................................................3

    A.    Nature of the Case ................................................................3

    B.    Background Regarding SEC Tips, Complaints, and Referrals .............5

    C.    Statement of Facts ................................................................6

        *1. Xanthopoulos's SEC Filings* ...........................................7

        *2. Xanthopoulos's OSHA Complaint*....................................9

    D.    The ALJ's Decision and Order...........................................12

    E.    The Board's Final Decision and Order ...............................13

SUMMARY OF ARGUMENT ...............................................................14

ARGUMENT ..........................................................................................15

    A.    Standard of Review ...........................................................15

    B.    The Board Properly Concluded that Xanthopoulos's Whistleblower Complaint was Untimely Filed ...................................17

    C.    The Board Did Not Abuse It's Discretion in Concluding Equitable Tolling was Unwarranted....................................18

      1. *The TCR Forms Xanthopoulos Submitted to the SEC Did Not Constitute a Precise SOX Claim Because They Did Not Seek A Retaliation Investigation or Remedy* ........................................................................20

      2. *Xanthopoulos's Did Not Mistakenly File in the Wrong Forum Because He Knows OSHA, Not the SEC, Received Retaliation Compliants* ...................................................27

CONCLUSION .....................................................................................31

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page

Cases:

*Abraham Lincoln Mem'l Hosp. v. Sebelius*,
    698 F.3d 536 (7th Cir. 2012) ...............................................................16

*Blanche v. United States*,
    811 F.3d 953 (7th Cir. 2016) ...............................................................18

*Burnett v. New York Cent. R.R.*,
    380 U.S. 424 (1965)............................................................... 19, 20, 22

*Carpenter v. Douma*,
    840 F.3d 867 (7th Cir. 2016) ...............................................................17

*Coppinger-Martin v. Solis*,
    627 F.3d 745 (9th Cir. 2010) ....................................................... 29, 30

*Credit Suisse Secs. (USA) LLC v. Simmonds,*
    566 U.S. 221 (2012)............................................................................18

*DeFazio v. Sharaton Steamboat Resorts & Villas*,
    ARB No. 2011-0063, 2012 WL 5391427 (ARB Oct. 23, 2012).........................19

*Fisher v. Johnson,*
    174 F.3d 710 (5th Cir. 1999) ...............................................................18

*Harp v. Charter Commc'ns, Inc.*,
    558 F.3d 722 (7th Cir. 2009) .................................................................3

*Johnson v. Ry. Express Agency*,
    421 U.S. 454 (1975)........................................................ 19 & *passim*

Cases--Continued:

*Lombardo v. United States*,
   860 F.3d 547 (7th Cir. 2017), *cert. denied*,
   138 S. Ct. 1032 (2018) ..........................................................................16

*Lozano v. Montoya Alvarez*,
   572 U.S. 1 (2014) ..................................................................................18

*Mach Mining, LLC v. Sec'y of Labor, Mine Safety & Health Admin.*,
   728 F.3d 643 (7th Cir. 2013) ...............................................................16

*McManus v. Tetra Tech Constr.*,
   ARB Case No. 16-063, 2017 WL 9534726 (ARB Dec. 19, 2017) .....................17

*Obriecht v. Foster*,
   727 F.3d 744 (7th Cir. 2013) ...............................................................17

*Orchard Hill Bldg. Co. v. U.S. Army Corps of Eng'rs*,
   893 F.3d 1017 (7th Cir. 2018) .............................................................16

*Roadway Express, Inc. v. U.S. Dep't of Labor*,
   612 F.3d 660 (7th Cir. 2010) ...............................................................16

*Sch. Dist. of the City of Allentown v. Marshall*,
   657 F.2d 16 (3d Cir. 1981) ...................................................................19

*Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*,
   782 F.3d 922 (7th Cir. 2015) ...............................................................18

*Simms v. Acevedo*,
   595 F.3d 774 (7th Cir. 2010) ...............................................................18

*Turgeau v. Admin. Rev. Bd.*,
   446 F.3d 1052 (10th Cir. 2006) ........................................... 20 & *passim*

Cases--Continued:

*Xanthopoulos v. Marsh & McLennan Cos., Inc.*,
ALJ No. 2019-SOX-00008 (OALJ Mar. 22, 2019)...............................................12

*Xanthopoulos v. Marsh & McClennan Cos., Inc.*,
ARB No. 2019-0045 (ARB June 29, 2020)........................................ 2, 13, 17, 23

Statutes:

Administrative Procedure Act,
5 U.S.C. § 706(2) .................................................................................15
5 U.S.C. § 706(2)(A) ..................................................................... 15, 16
5 U.S.C. § 706(E)........................................................................... 15, 16

Securities Exchange Act,
15 U.S.C. § 78u-6(b)(1)(A)-(B)................................................................6
15 U.S.C. § 78u-6(b)(1)(B)(i)..................................................................6
15 U.S.C. § 78u-6(b)...............................................................................6
15 U.S.C. § 78u-6(h)...............................................................................6

Sarbanes-Oxley Act,
18 U.S.C. § 1514A...................................................................................1
18 U.S.C. § 1514A(a) ..............................................................................3
18 U.S.C. § 1514A(b)(1)(A)..................................................................2, 3
18 U.S.C. § 1514A(b)(2)(A) ............................................................ 2, 4, 15
18 U.S.C. § 1514A(b)(2)(D)................................................................4, 17
18 U.S.C. § 1514A(c) ..............................................................................4

Wendell H. Ford Aviation Investment& Reform Act of the 21st Century,
49 U.S.C. § 42121(b).................................................................................2
49 U.S.C. § 42121(b)(2)(A)......................................................................4
49 U.S.C. § 42121(b)(4) ...........................................................................2
49 U.S.C. § 42121(b)(4)(A).................................................................5, 15

Code of Federal Regulations:

17 C.F.R. § 240.21F-3........................................................................6

29 C.F.R. Part 18.............................................................................5

29 C.F.R. § 1980.............................................................................1

29 C.F.R. § 1980.103(c)....................................................................4
29 C.F.R. § 1980.103(d) ...............................................................4, 17
29 C.F.R. § 1980.104(a)....................................................................4
29 C.F.R. § 1980.104(b)(1)................................................................3
29 C.F.R. § 1980.105.......................................................................4
29 C.F.R. § 1980.106.......................................................................4
29 C.F.R. § 1980.110.......................................................................5
29 C.F.R. § 1980.112(a)..................................................................2, 5

Other Authorities:

U.S. Dep't of Labor,
    Office of Sec'y,
        Delegation of Auth. & Assignment of Reponsibiltiy
        to the Assistant Sec'y for Occupational Safety & Health
            Sec'y's Order No. 08-2020. 85 Fed. Reg. 58393,
            2020 WL 5578580 (Sept. 18, 2020) (Final Rule) .......................................4

    SEC Office of the Whistleblower,
        information on submitting a Tip, Complaint and Referral Form,
            https://www.sec.gov/whistleblower/submit-a-tip........................................22

    U.S. Sec. & Exch.,
        Comm'n, Report Suspected Securities
        Fraud or Wrongdoing (Dec 10, 2020),
        https://www.sec.gov/tcr. ..............................................................5

Other Authorities--Continued:

Comm'n, <u>Filing Guidance and Confidentiality</u> (May 09, 2018),
<u>https://www.sec.gov/complaint/info</u>................................................................5

Comm'n, <u>Welcome to Tips, Complaints, and Referrals</u>,
https://acadia.sec.gov/TcrExternalWeb/faces/pages/disclaimer.
<u>jspx?_afrLoop=1106960588315389&_afrWindowMode=0&_adf.ctrl</u>
<u>state=18hi2fmb6v29</u> ........................................................................................6

No. 20-2604

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT
_____

APOSTOLOS XANTHOPOULOS,
Petitioner,

v.

UNITED STATES DEPARTMENT OF LABOR,
ADMINSTRATIVE REVIEW BOARD
Respondent,

MARSH & MCLENNAN COMPANIES, INC d/b/a
MERCER INVESTMENT CONSULTING,
Intervening Respondent
_____

On Petition for Review of the Final Decision and Order of the
United States Department of Labor's Administrative Review Board
_____

**BRIEF FOR THE SECRETARY OF LABOR**

## JURISDICTIONAL STATEMENT

This case arises under the employee protection provisions of the Sarbanes-Oxley Act ("SOX," "Sarbanes-Oxley," or "the Act"), 18 U.S.C. § 1514A, and its implementing regulations, 29 C.F.R. § 1980. The Secretary of Labor ("Secretary")

had subject matter jurisdiction over the underlying administrative complaint, which petitioner Apostolos Xanthopoulos ("Xanthopoulos") filed with the Occupational Safety and Health Administration ("OSHA") against his former employer, Marsh & McLennan Companies, Inc. ("Mercer"), pursuant to 18 U.S.C. § 1514A(b)(1)(A). The Department of Labor's Administrative Review Board ("ARB" or "the Board") issued a Final Decision and Order on June 29, 2020, affirming the Administrative Law Judge's ("ALJ") dismissal of Xanthopoulos's untimely complaint. *Xanthopoulos v. Marsh & McClennan Cos., Inc.*, ARB No. 2019-0045 (ARB June 29, 2020). Xanthopoulos filed a timely petition for review with this Court on August 24, 2020. *See* 29 C.F.R. § 1980.112(a); *see also* 49 U.S.C. § 42121(b)(4).[1]

## STATEMENT OF THE ISSUES

(1) Whether the Board correctly found that Xanthopoulos's complaint was time-barred because it was filed outside the applicable limitations period; and (2) whether the Board acted within its discretion in holding that Xanthopoulos's justification for his untimely filing was insufficient to warrant equitable tolling of the limitations period.

---

[1] Per 18 U.S.C. § 1514A(b)(2)(A), Sarbanes-Oxley proceedings are governed by the rules and procedures of the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century ("AIR 21"), 49 U.S.C. § 42121(b).

## STATEMENT OF THE CASE

### A. Nature of the Case

SOX affords whistleblowing protections to an employee who provides information to his employer or the federal government about conduct that he reasonably believes constitutes mail, wire, bank, or securities fraud, or a violation of any Securities and Exchange Commission ("SEC") rule or regulation, or a violation of any provision of federal law relating to fraud against shareholders. *See* 18 U.S.C. § 1514A(a). SOX prohibits employers from discharging, demoting, suspending, threatening, harassing, or in any other manner discriminating against an employee in the terms and conditions of employment because of such protected activity. *Id.*

An employee who believes that he has been subjected to retaliation for protected activity may file a complaint with the Secretary. 18 U.S.C. § 1514A(b)(1)(A). To make a prima facie showing under SOX's whistleblower-protection provision, an employee's complaint must allege that: (1) the employee engaged in protected activity; (2) the employer knew or suspected that the employee had engaged in protected activity; (3) the employee suffered an adverse action; and (4) the circumstances raise an inference that the protected activity was a contributing factor in the unfavorable action. 29 C.F.R. § 1980.104(b)(1); *Harp v. Charter Commc'ns, Inc.*, 558 F.3d 722, 723 (7th Cir. 2009). A whistleblower

complaint must be filed with the Secretary "not later than 180 days after the date on which the violation occurs, or after the date on which the employee became aware of the violation" absent grounds for equitably tolling the limitations period. 18 U.S.C. § 1514A(b)(2)(D); *see also* 29 C.F.R. § 1980.103(d).

The Secretary has delegated responsibility for receiving and investigating SOX whistleblower complaints to OSHA. *See* U.S. Dep't of Labor, Office of Sec'y, Delegation of Auth. & Assignment of Responsibility to the Assistant Sec'y for Occupational Safety & Health, Sec'y's Order No. 08-2020, 85 Fed. Reg. 58393, 2020 WL 5578580 (Sept. 18, 2020) (Final Rule); *see also* 29 C.F.R. §§ 1980.103(c), 1980.104(a). Following an investigation, OSHA issues a determination either dismissing the complaint or finding a violation and ordering appropriate relief. *See* 18 U.S.C. § 1514A(b)(2)(A); 49 U.S.C. § 42121(b)(2)(A); 29 C.F.R. § 1980.105. An employee who prevails in his SOX whistleblowing complaint is "entitled to all relief necessary to make the employee whole," including reinstatement and backpay. 18 U.S.C. § 1514A(c).

Either the complainant or the respondent may file objections to OSHA's determination within thirty days and may request a *de novo* hearing before a Department of Labor ALJ. *See* 49 U.S.C. § 42121(b)(2)(A); 29 C.F.R. § 1980.106. The ALJ has wide discretion to manage the hearing process, including the authority to limit discovery or to decide the matter without a hearing based on a

motion to dismiss or motion for summary decision, as appropriate.  *See generally* 29 C.F.R. Part 18.  The ALJ's decision is subject to the ARB's discretionary review and the ARB's decision, in turn, is subject to discretionary review by the Secretary.  *See* 29 C.F.R. § 1980.110.  An ARB decision for which the Secretary does not exercise discretionary review, such as the decision in this case, becomes a final decision reviewable in the court of appeals for the circuit in which the violation allegedly occurred or in which the complainant resided on the date of the alleged violation.  *See* 49 U.S.C. § 42121(b)(4)(A); 29 C.F.R. § 1980.112(a).

## B. Background Regarding SEC Tips, Complaints, and Referrals

The SEC maintains an online platform for the public to submit tips, complaints, and referrals ("TCRs") using the agency's online complaint form. U.S. Sec. & Exch. Comm'n, <u>Report Suspected Securities Fraud or Wrongdoing</u> (Dec 10, 2020), https://www.sec.gov/tcr.  The TCR Form serves to provide information about possible violations of federal securities laws, such as fraudulent conduct associated with public pension plans, fraudulent sales or misappropriation of securities, and insider trading.  *Id.*  The SEC may use TCR submissions to instigate an enforcement action.  U.S. Sec. & Exch. Comm'n, <u>Filing Guidance and Confidentiality</u> (May 09, 2018), https://www.sec.gov/complaint/info.

The TCR Form provides submitters with the option of electing whistleblower status, which may entitle them to monetary incentives.  U.S. Sec. &

Exch. Comm'n, <u>Welcome to Tips, Complaints, and Referrals</u>,

https://acadia.sec.gov/TcrExternalWeb/faces/pages/disclaimer.jspx?_afrLoop=110
6960588315389&_afrWindowMode=0&_adf.ctrl-state=18hi2fmb6v_29.  The

Dodd-Frank Act instructs the SEC to issue a cash award to individuals who

identified as a whistleblower and who provided original information that led to a

successful enforcement action resulting in over $1,000,000 in sanctions.  15 U.S.C.

§ 78u-6(b); 17 C.F.R. § 240.21F-3.  The monetary award may range from ten to

thirty percent of the total sanctions collected.  15 U.S.C. §78u-6(b)(1)(A)-(B).

The Dodd-Frank Act does not authorize the SEC to provide traditional

retaliation protections, such as reinstatement, backpay, or litigation costs.  *See id.* §

78u-6(h).  Rather, the Dodd-Frank Act creates a private right of action to seek

these protections through a federal court claim.  *Id*. § 78u-6(h)(1)(B)(i).  Thus, the

SEC does not offer make-whole employment remedies directly to TCR submitters.

### C. Statement of Facts

Xanthopoulos was hired by Mercer as a Senior Consultant in November

2013; he was terminated on October 03, 2017.  Pet'r's Exs. B at 1; H at 2.

Xanthopoulos filed several TCRs with the SEC both during and after his

employment at Mercer.  *See* Pet'r's Br. Exs. G-L.  Xanthopoulos filed a

whistleblower complaint with OSHA approximately one year after his termination.

Complainant's Whistleblower Compl.

### 1.  Xanthopoulos's SEC Filings

Xanthopoulos filed his first TCR form with the SEC on August 13, 2015.[2]

Pet'r's Ex. G.  This complaint concerned financial improprieties, alleging that

Mercer's "ratings do not account for portfolio performance."  *Id.* at 1.

Xanthopoulos submitted his second TCR approximately two years later, on

October 12, 2017, after his termination.  Pet'r's Ex. H.  This form primarily

reported on Xanthopoulos's continuing concerns about Mercer's ratings strategies,

and included only a single comment about his termination:

> I will be sending you more studies, which I conducted at Mercer,
> showing that the claim that they present to their clients, that their ratings
> of strategies capture the probability of out-performance of these
> portfolio strategies in the future, is a complete, and known lie.  Eleven
> trillion US dollars worth of retirement account money relies on such
> ratings, and of course, I am the one who got fired, for telling my
> superiors, that I cannot establish ANY statistical relation between their
> ratings, and performance, as they claim.

*Id.* at 1.  Xanthopoulos filed additional TCR forms in January, February, and

March 2018.  Pet'r's Exs. I-K.  All were accompanied by evidence concerning

Mercer's performance ratings.  *See id.*

---

[2] Petitioner's Brief identifies Pet'r's Ex. F as a prior TCR filing made March 03, 2014.  However, this form is identical to the form submitted as Pet'r's Ex. G.  Both forms list an "occurrence date" of March 03, 2014 and both are signed and dated on August 13, 2015.  *Compare* Pet'r's Ex. F *with* Pet'r's Ex. G.  Thus, the record establishes that Xanthopoulos filed his first TCR in August 2015, addressing an incident originating in March 2014.

The January TCR, while providing the first mention of his alleged retaliation, primarily addressed Xanthopoulos's efforts to complete an evidentiary file that would prove the financial wrongdoings alleged in his prior SEC communications.  Pet'r's Br. Ex. I. at 1.  He explained:

> I am in essence punished, because (i) I adhere to the truth, and (ii) I refuse to succumb to implicit pressure … Ultimately the interest of the investing public (the fire-fighter and school teacher that wants to retire safely) is not served.  Specifically, Item (iii) on page 1 of my attached document 'The File is Incomplete,' which I am now working on, will show my colleagues LACK MATERIAL KNOWLEDGE IN FINANCE AND ECONOMICS that should preclude them from acting as consultants or strategy raters of anything…

*Id.* at 1.  Xanthopoulos's January TCR filings relayed his goal of serving the public interest and emphasized his eagerness to persist with his TCR filings, as "what Mercer does must be stopped."  *Id.* at 4.

Xanthopoulos's February and March TCRs both summarized his previous SEC filings reporting on Mercer's alleged ongoing fraudulent investment scheme "under the general title 'Mercer's Assignment of Ratings for Portfolio Strategies.'" Pet'r's Br. Exs. J; K at 1 (describing Mercer's activities as "pay for play").  Both TCRs responded affirmatively when asked whether Xanthopoulos experienced retaliation.  Pet'r's Br. Exs. J at 8; K at 8.  However, the March TCR deferred discussing the termination, stating "I am not going to refer to what happened to me."  Pet'r's Ex. K at 8.

8

Each submitted TCR reported on actions occurring in 2014, 2015, and 2016. *See* Pet'r's Exs. G-L.   None of the TCRs submitted requested the SEC's assistance with investigating Xanthopoulos's 2017 termination or requested that the SEC award him employment-related remedies such as reinstatement or backpay. *See* Pet'r's Exs. H-L.  Those TCRs that disclosed alleged retaliation requested only that Xanthopoulos be considered for the SEC's monetary whistleblower award. *See* Pet'r's Exs. J-L.

Xanthopoulos submitted his final TCR in June 2018.  This TCR continued Xanthopoulos's campaign against Mercer's alleged financial wrongs, relaying, "I remain faithful to this course, and will continue to submit evidence of the fact that Mercer, does not care about the negative impact that its ratings have on the investor public."  Pet'r's Br. Ex. L at 8-9.  The June TCR also considered whether Xanthopoulos may have a personal claim against Mercer for his alleged retaliation, contemplating, "perhaps it is time for me, to consider some suing against Mercer, no?" and noting that he was "currently investigating his options" regarding wrongful termination. *Id.* at 8.

## 2. Xanthopoulos's OSHA Complaint

Xanthopoulos filed a whistleblower complaint with OSHA on September 18, 2018, using an online complaint form.  Complainant's Whistleblower Compl. at 1. Xanthopoulos alleged that Mercer engaged in the following adverse actions:

termination/layoff, demotion/reduced hours, negative performance evaluation, and harassment/intimidation. *Id.* at 2. Xanthopoulos identified October 03, 2017 as the date of the most recent adverse action. *Id.* at 1. Xanthopoulos attributed his adverse action, in part, to the fact that he "[t]estified or provided statement in a proceeding (e.g., government inspection or investigation)." *Id.* at 2. Xanthopoulos also noted that "I filed several complaints with the SEC" and that "I will furnish all SEC reports." *Id.*

On October 22, 2018, OSHA dismissed Xanthopoulos's whistleblower complaint as untimely filed. Secretary's Findings, Oct. 22, 2018. Xanthopoulos subsequently requested a hearing before an ALJ. Pet'r's Ex. B. A seven page letter explaining Xanthopoulos's filing delay accompanied the hearing request. *See id.*

Xanthopoulos attributed his desire to assemble additional evidence as responsible for the OSHA complaint's delayed filing. He explained:

> after my discharge from Mercer, there was no, 180-day-period in which I could have decided in clear conscience, that I had every information needed, to contact OSHA. A kind gentleman who is part of AHEPA, an organization that I am also a member of, had suggested to me, winter of 2018, to contact OSHA. I was planning to make such contact. But more evidence … was still coming at me, making me realize, I did not fully understand what had really happened and why, related to my discharge from Mercer. There was a lot of information, which I thought I

should have amassed for my OSHA filing to sound remotely credible.

*Id.* at 1. Xanthopoulos gathered such information "for a full year after my 2017 discharge." *Id.* at 2.

Xanthopoulos identified the SEC press release on Transamerica as the "pivotal" proof needed to support his retaliation claim. *Id.* at 4. His objection stated, "[w]ithout the 2018 SEC News Release, information at hand was not enough justification to file an OSHA/SOX report, if it was within 180 days from discharge." *Id.* In other words, "[i]t would be hard to prove I was fired because I had contacted the SEC." *Id.* Xanthopoulos expressed further concern that "[h]ad I come to OSHA without that August 27, 2018 SEC Release, I would not have appeared credible." *Id.* at 2.

Xanthopoulos's statement also summarized his prior SEC filings as concerning issues under the Dodd-Frank Act. He wrote:

> I had been filing more TCR reports with the SEC since October 2017, regarding Mercer. All of these reports related to matters under jurisdiction of the SEC and pertained to the 2010 Dodd-Frank Act. I contacted the SEC in 2014, while at Mercer, for matters which I believe mislead investors. In other words, my reports to the SEC related to several statistical studies that I was assigned to do, the results of which were not particularly liked, let alone understood, by Mercer's

management.  I do believe that I was retaliated against for that reason and for my subsequently required contact with the SEC in 2016.

*Id.* at 5.

### D. The ALJ's Decision and Order

ALJ Applewhite commenced proceedings by issuing an Order to Show Cause.  ALJ Order to Show Cause, Jan. 18, 2019.  The order directed Xanthopoulos to address why equitable tolling principles should apply.  *Id.* at 2.  Xanthopoulos submitted a response and supporting evidence.  Complainant's Resp. to Order to Show Cause, Feb. 13, 2019.

ALJ Applewhite issued a Decision and Order dismissing Xanthopoulos's complaint on March 22, 2019.  *Xanthopoulos v. Marsh & McLennan Cos., Inc.*, 2019-SOX-00008 (OALJ Mar. 22, 2019).  The ALJ held that construing the record liberally, the matter did not present facts meriting equitable tolling.  *Id.* at 2.  Specifically, Xanthopoulos failed to show that he "raised his claim in a wrong forum, was misled, prevented from, or was lulled into forgoing his rights."  *Id.* at 2-3.  Therefore, ALJ Applewhite dismissed the SOX complaint as untimely.  *Id.* at 3.

## E. The Board's Final Decision and Order

Xanthopoulos appealed to the ARB. Complainant's Pet. for Rev., Apr. 1, 2019. The Board agreed with ALJ Applewhite that Xanthopoulos failed to provide evidence that equitable tolling was warranted. *Xanthopoulos v. Marsh & McClennan Cos., Inc.*, ARB No. 2019-0045 at 5 (ARB June 29, 2020). The Board did not find that the record supported Xanthopoulos's sole argument for equitable tolling: that he mistakenly filed the precise statutory claim within the wrong forum. *Id.* at 3. The Board found that Xanthopoulos's SEC filings did not constitute the precise statutory claim because nothing indicated that Xanthopoulos wanted the SEC to investigate his discharge or provide traditional SOX remedies such as reinstatement or backpay. *Id.* at 5. Rather, the record showed that Xanthopoulos's primary purpose at the SEC was to right underlying wrongs against shareholders. *Id.* at 4. The only personal remedy that Xanthopoulos mentioned in his TCR forms was the monetary whistleblower award that the SEC offers for individuals who provide qualifying, original information to the SEC. *Id.* Thus, the Board concluded that Xanthopoulos did not qualify for equitable tolling because he had "deliberately filed with the SEC a non-SOX claim." *Id.* at 5. The Board accordingly affirmed the ALJ's order dismissing the complaint. *Id.*

## SUMMARY OF ARGUMENT

Xanthopoulos was required to file his Sarbanes-Oxley complaint within 180 days of the date that he learned of his termination. The ALJ and ARB properly held that Xanthopoulos did not meet that requirement because he filed his OSHA complaint 350 days after his October 03, 2017 termination.

The ALJ and the Board also considered whether Xanthopoulos was entitled to equitable tolling. Xanthopoulos claimed that tolling was merited because he had mistakenly filed his whistleblowing complaint in the wrong forum. Specifically, Xanthopoulos alleged that the numerous TCRs submitted to the SEC constituted SOX whistleblowing complaints. The ALJ and the Board found that Xanthopoulos did not meet his burden in demonstrating that his SEC filings were SOX claims mistakenly filed in the wrong forum.

Xanthopoulos's TCRs did not constitute a precise SOX claim because there was not a complete identity between the SEC and OSHA filings. Xanthopoulos never asked the SEC to investigate his termination. Nor did he request remedies consistent with an adverse employment action. Rather, Xanthopoulos's TCRs collectively pursued the broad, public interest goal of exposing and stopping

Mercer's alleged wrongdoings to the investing public. Therefore, the TCRs present a distinct claim from the untimely OSHA SOX complaint.

Additionally, Xanthopoulos did not mistakenly file his SOX claim with the SEC. Xanthopoulos first learned that OSHA was the proper forum for his retaliation claim in winter 2018. Xanthopoulos purposefully delayed filing his OSHA complaint until August 2018, when he believed he had sufficient evidence to support his case. Xanthopoulos continued to file TCRs while planning to contact OSHA. Thus, Xanthopoulos purposefully filed his TCRs as non-SOX complaints because he knew that OSHA was the correct forum for his SOX retaliation claim. Under these circumstances, the ALJ and the Board acted within their discretion in refusing to toll SOX's 180-day statute of limitations.

## ARGUMENT

### A.    Standard of Review

Judicial review under Sarbanes-Oxley is governed by the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2). *See* 18 U.S.C. § 1514A(b)(2)(A); 49 U.S.C. § 42121(b)(4)(A). The APA provides that a court may overturn the agency's order only if its decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" or its factual findings are "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E);

*Roadway Express, Inc. v. U.S. Dep't of Labor*, 612 F.3d 660, 664 (7th Cir. 2010) (citing 5 U.S.C. § 706(2)(A), (E)).  Under this standard, "the scope of review is 'narrow and a court must not substitute its judgement for that of the agency.'" *Orchard Hill Bldg. Co. v. U.S. Army Corps of Eng'rs*, 893 F.3d 1017, 1024 (7th Cir. 2018) (quoting *Abraham Lincoln Mem'l Hosp. v. Sebelius*, 698 F.3d 536, 547 (7th Cir. 2012)).

The threshold question of whether Xanthopoulos timely filed his OSHA complaint should be reviewed de novo.  *See Mach Mining, LLC v. Sec'y of Labor, Mine Safety & Health Admin.*, 728 F.3d 643, 659 (7th Cir. 2013) (explaining that questions of law are reviewed de novo).  Here, the ARB affirmed the ALJ's determination that, as a matter of law, Xanthopoulos did not file his SOX whistleblower complaint within 180 days from the date of his alleged adverse action.  Thus, the Court should review the ARB's decision that Xanthopoulos's complaint was untimely de novo, as a matter of law.

The Court should review the Board's decision affirming the ALJ's determination that Xanthopoulos was not entitled to equitable tolling for abuse of discretion.  *Cf. Lombardo v. United States*, 860 F.3d 547, 551 (7th Cir. 2017), *cert. denied*, 138 S. Ct. 1032 (2018) (noting in the context of motion to vacate conviction that "'We review the decision to deny equitable tolling for an abuse of

discretion.'") (quoting *Carpenter v. Douma*, 840 F.3d 867, 870 (7th Cir. 2016)

(quoting *Obriecht v. Foster*, 727 F.3d 744, 748 (7th Cir. 2013))).

### B. The Board Properly Concluded that Xanthopoulos's Whistleblower Complaint was Untimely Filed

Both the ALJ and ARB correctly determined that Xanthopoulos's complaint

was filed outside the applicable statute of limitations. A SOX whistleblower

complaint must be filed no later than 180 days after the date on which the violation

occurs, or after the date on which the employee became aware of the violation. 18

U.S.C. § 1514A(b)(2)(D); *see also* 29 C.F.R. § 1980.103(d).[3]  Xanthopoulos filed

his whistleblower complaint on September 18, 2018. Complainant Whistleblower

Compl. The complaint alleged that Xanthopoulos suffered a retaliatory

termination on October 03, 2017. *Id.*  As the ARB correctly calculated,

Xanthopoulos filed his complaint 350 days after the alleged retaliation. ARB No.

2019-0045 at 2. Xanthopoulos's complaint was therefore untimely because it was

submitted 170 days beyond the permissible filing period.

---

[3] The statutory reference to "the date on which the employee became aware of the violation" refers to the date on which the employee learned of the adverse action. Thus, SOX incorporates the common law "discovery rule" that the statute of limitations begins to run on the day that the employee receives "final, definitive, and unequivocal notice of the adverse action," not when the employee learns of employer's retaliatory motive or feels the effects of the adverse action. *See McManus v. Tetra Tech Constr.,* ARB Case No. 16-063, 2017 WL 9534726, at *2 (ARB Dec. 19, 2017).

**C.    The Board Did Not Abuse Its Discretion in Concluding Equitable Tolling Was Unwarranted**

Both the ALJ and ARB considered whether Xanthopoulos had presented sufficient evidence to warrant equitable tolling and both properly determined that he had not. Equitable tolling "pauses the running of, or 'tolls,' a statute of limitations where a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014) (citations omitted). Generally, the plaintiff bears the burden of establishing that (1) he "diligently" pursued his claim; and (2) "some extraordinary circumstances" prevented his timely filing. *Blanche v. United States*, 811 F.3d 953, 962 (7th Cir. 2016) (citing *Credit Suisse Secs. (USA) LLC v. Simmonds*, 566 U.S. 221, 227 (2012)). This Court grants equitable tolling "sparingly only when extraordinary circumstances far beyond the litigant's control prevented timely filing." *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 930 (7th Cir. 2015) (quoting *Simms v. Acevedo*, 595 F.3d 774, 781 (7th Cir. 2010)). Equitable tolling is a "discretionary doctrine that turns on the facts and circumstances of a particular case . . . ." *Fisher v. Johnson,* 174 F.3d 710, 713 (5th Cir. 1999)).

The ARB applies a similarly stringent equitable tolling standard. The Board recognizes four appropriate situations for tolling: (1) when the defendant has

actively mislead the plaintiff respecting the cause of action, (2) the plaintiff has in some extraordinary way been prevented from asserting his rights, (3) the plaintiff has raised the precise statutory claim in issue but has mistakenly done so in the wrong forum, and (4) where an employer's acts or omissions have lulled the complainant into foregoing prompt action to vindicate his rights. *DeFazio v. Sheraton Steamboat Resorts & Villas*, ARB No. 2011-0063, 2012 WL 5391427 (ARB Oct. 23, 2012) (quoting *Sch. Dist. of the City of Allentown v. Marshall*, 657 F.2d 16, 20 (3d Cir. 1981)).

Xanthopoulos argues that his SOX whistleblower complaint should be equitably tolled because his SEC filings constitute SOX claims mistakenly filed in the wrong forum. *See DeFazio*, 2012 WL 5391427; Pet'r's Br. The Supreme Court case *Burnett v. New York Cent. R.R.*, supports the proposition that a limitations period may be tolled if the precise statutory claim is filed in the wrong forum. 380 U.S. 424 (1965). To merit equitable tolling in such cases, there must be a complete identity of claims between the original complaint in the wrong forum and the later, untimely complaint in the correct forum. *Johnson v. Ry. Express Agency*, 421 U.S. 454, 461, 466 (1975) (declining to equitably toll a discrimination claim under Section 1981, on the basis of plaintiff's timely filed Title VII claim, because each statute's remedies, "although related, and although directed to most of the same ends, are separate, distinct, and independent"); *see*

*also Turgeau v. Admin. Rev. Bd.*, 446 F.3d 1052, 1057-58 (10th Cir. 2006) (equitable tolling was warranted where plaintiff's timely state claim was preempted under AIR 21 and the plaintiff's untimely AIR 21 complaint asserted "a virtually identical claim as in his state suit").  Allowing tolling under such circumstances is merited because the timely filing within the wrong forum places defendants on notice, thereby preventing any surprise by the revival of stale claims.  *Burnett*, 380 U.S. at 428.

> **1.  The TCR Forms Xanthopoulos Submitted to the SEC Did Not Constitute a Precise SOX Claim Because They Did Not Seek A Retaliation Investigation or Remedy**

There was not a complete identity between Xanthopoulos's SEC and OSHA filings because the remedies sought under each were separate and distinct.  *See Johnson* 421 U.S. 454.  Xanthopoulos's primary purpose in filing the TCRs was to prompt SEC investigation and enforcement action to correct Mercer's alleged wrongful acts against the investing public, not to remedy an adverse employment action.  Xanthopoulos's October 2017 TCR, the first filed following his termination, reported his concerns regarding Mercer's financial advice rather than his personal employment situation.  Pet'r's Ex. H.  The single mention of

Xanthopoulos's termination is merely interposed among statements addressing the purpose of his complaint:

> I will be sending you more studies, which I conducted at Mercer, showing that the claim that they present to their clients, that their ratings of strategies capture the probability of out-performance of these portfolio strategies in the future, is a complete, and known lie. Eleven trillion US dollars worth of retirement account money relies on such ratings, and of course, I am the one who got fired, for telling my superiors, that I cannot establish ANY statistical relation between their ratings, and performance, as they claim.

*Id.* The January TCR, while specifically disclosing retaliation, discussed Xanthopoulos's termination as an effect of the TCRs' central purpose, providing the SEC with information in the interest of protecting the investing public. *See* Pet'r's Ex. I. Xanthopoulos summarized his employment and reporting history, but concluded by focusing on his continued efforts to disclose Mercer's alleged financial wrongs:

> I am in essence punished, because (i) I adhere to the truth, and (ii) I refuse to succumb to implicit pressure … Ultimately the interest of the investing public (the fire-fighter and school teacher that wants to retire safely) is not served. Specifically, Item (iii) on page 1 of my attached document 'The File is Incomplete,' which I am now working on, will show my colleagues LACK MATERIAL KNOWLEDGE IN FINANCE AND ECONOMICS that should preclude them from acting as consultants or strategy raters of anything…

*Id.* at 1. In the March 2018 filing, Xanthopoulos wrote dismissively of his firing, noting "I am not going to refer to what happened to me." Pet'r's Ex. K at 8. This

statement further exhibits Xanthopoulos's disinterest in having the SEC investigate his personal employment situation.  Moreover, the evidence accompanying Xanthopoulos's TCRs bears no relation to an adverse employment claim, omitting such relevant documents as performance reviews, supervisory communications, or other human resources filings.  *See* Pet'r's Exs. J at 11, K 11-12.  These omissions underscore the TCRs' focus on public interests rather than personal ones.

Xanthopoulos never explicitly requested that the SEC investigate and remedy his termination, preventing Mercer from being placed on notice regarding his whistleblowing complaint.  *See Burnett*, 380 U.S. at 428.[4]  The TCRs filed between January and June 2018, while specifically alleging retaliation, never explicitly ask the SEC to investigate an adverse employment action, illustrating that Xanthopoulos's TCRs serve to provide information rather than request assistance.  The June 2018 filing (submitted outside the applicable limitations period) is the first TCR to introduce a possible investigation into Xanthopoulos's wrongful termination.  *See* Pet'r's Ex. L.  However, the June filing establishes that Xanthopoulos, not the SEC, would be conducting such an investigation.  *Id.* at 8

---

[4] Additionally and notably, TCR Forms filed with the SEC are kept confidential and may even be filed anonymously.  For this additional reason, Xanthopoulos's TCR Forms would not have put Mercer on notice of any retaliation claim mentioned in the forms at the time that they were filed with the SEC. *See* SEC Office of the Whistleblower, information on submitting a Tip, Complaint and Referral Form, https://www.sec.gov/whistleblower/submit-a-tip.

("I am currently investigating my options;" "perhaps it is time for me, to consider some suing against Mercer, no?").

Xanthopoulos's SEC filings also do not seek any appropriate recompense for an SOX complaint. *See Johnson*, 421 U.S. 454 (statutory claims presenting separate and independent remedies do not constitute identical causes of action for tolling purposes). Xanthopoulos never asked the SEC to pursue traditional retaliation remedies, such as the restoration of employment or lost wages. *See* Pet'r's Exs. G-L. Despite disclosing his alleged retaliation, Xanthopoulos's SEC filings request only that he be considered for a monetary whistleblower award. *See* Pet'r's Exs. J-L. The absence of any requests for "make-whole remedies concerning his employment" further shows that Xanthopoulos did not intend for his TCRs to be construed as a SOX retaliation claim. ARB No. 2019-0045 at 5.

Xanthopoulos's statements show that he viewed the OSHA and SEC filings as concerning distinct issues. Xanthopoulos's Objection to the Secretary's Findings described his post-termination TCRs as relating primarily to his allegation that Mercer mislead investors. He wrote:

> I had been filing more TCR reports with the SEC since October 2017, regarding Mercer. All of these reports related to matters under jurisdiction of the SEC and pertained to the 2010 Dodd-Frank Act. I contacted the SEC in 2014, while at Mercer, for matters which I believe mislead investors. In other words, my reports to the SEC related to several statistical studies that I was assigned to do, the results of which were not particularly liked, let alone understood, by Mercer's

management.  I do believe that I was retaliated against for that reason
and for my subsequently required contact with the SEC in 2016.

Pet'r's Ex. B at 5.  Xanthopoulos may have believed that he was retaliated against

at the time of his SEC filings.  However, his own statements demonstrate that

Xanthopoulos never viewed the retaliation against him as the TCR's subject.  As

Xanthopoulos described, the TCR's focus was consumer protection under the

Dodd-Frank Act, not whistleblower protection under the SOX.  *Id.*

Xanthopoulos's offer to provide OSHA with the SEC complaints further illustrate

that the TCR filings were supplemental to the SOX claim.  *See* Complainant's

Whistleblower Compl. at 4 ("I will furnish all SEC reports").  Had Xanthopoulos's

OSHA complaint concerned precisely the same issue as the TCR filings, such a

submission would be unnecessarily redundant.  The relevant dates that

Xanthopoulos provided on the TCRs and OSHA complaint further belie his present

claim that the filings concerned the same instances of wrongdoing.

Xanthopoulos's OSHA complaint lists a single adverse action date, October 03,

2017, his termination date.  *Id.*  However, in each TCR that requests the date of the

action being reported, Xanthopoulos responded with dates in 2014, 2015, and

2016, well before his termination.

Xanthopoulos's decision to confine the TCR's focus to remedying securities

violations prevents an application of equitable tolling.  "Equitable tolling does not

apply when the plaintiff has 'separate, distinct, and independent' remedies, and has

simply slept on his rights with regard[s] to one of them." *Turgeau*, 446 F.3d at

1060  This case in distinguishable from *Turgeau*, which Xanthopoulos relies on

for the proposition that equitable tolling is appropriate when a whistleblower claim

is mistakenly filed timely in the wrong forum rather than with OSHA.  In *Turgeau*,

the complainant filed a state wrongful discharge claim seeking reinstatement,

backpay and other employment remedies for retaliation he suffered because he

raised aviation safety violations.  *Id*. at 1054-55.  A district court held that the state

wrongful discharge claim was completely pre-empted by the AIR 21 whistleblower

provision administered by the Secretary.  Turgeau then filed an AIR 21 claim with

OSHA more than 90-days after his termination.  *Id*.  While recognizing the

Supreme Court decision in *Johnson* that "equitable tolling does not apply when the

plaintiff has 'separate, distinct, and independent' remedies," the Tenth Circuit held

that the Department should have tolled the statute of limitations based on the

mistaken filing of the state law claim because the state law claim and the AIR 21

claim were identical, as demonstrated by the district court's decision that the state

law claim was completely pre-empted by AIR 21.  *Id.* at 1060 (internal citations

omitted).  As explained herein, unlike *Turgeau*, Xanthopoulos pursued two distinct

remedies in two different forums: his retaliation claim with OSHA and his

securities reporting with the SEC.  Neither claim preempts the other and they are

not identical.  Thus, Xanthopoulos simply slept on his SOX retaliation claim by failing to timely file it.

Further, the TCR's statements about Xanthopoulos's termination cannot be isolated from the broader concerns featured within the complete set of SEC filings because equitable tolling requires a complete identity of claims.  *Johnson*, 421 U.S. at 461, 466.  Xanthopoulos filed his first TCR form on August 13, 2015, twenty-six months before his termination.  Pet'r's Br. Ex. G. Xanthopoulos's subsequent filings repeatedly refer to his SEC reporting as continuous and interrelated, all brought "under the general title 'Mercer's Assignment of Ratings for Portfolio Strategies'" Pet'r's Br. Ex. K at 1; *see also* Pet'r's Br. Ex. I (referring to pre-termination communications with the SEC and discussing his efforts to complete an evidentiary file addressing Mercer's alleged financial improprieties); Pet'r's Br. Ex. J (summarizing his previously filed TCRs as reporting an on-going fraudulent investment scheme).  As a whole, these filings serve the singular purpose of remedying what Xanthopoulos terms as "Mercer's pay for play" activities.  Pet'r's Br. Ex. K at 1.  As noted, Xanthopoulos's goal in filing the TCRs was to remedy this behavior by prompting SEC investigation and action to enforce the securities laws.  He writes, "I remain faithful to this course, and will continue to submit evidence of the fact that Mercer, does not care about the negative impact that its ratings have on the investor public."  Pet'r's Br. Ex. L at 8-9.  Under *Johnson*,

Xanthopoulos is not entitled to equitable tolling because his SEC and OSHA

filings, although related, seek separate and distinct remedies. 421 U.S. 454. In

other words, the TCRs and OSHA complaint must be "virtually identical."

*Turgeau*, 446 F.3d 1057. They are not. Together, the SEC filings seek to remedy

securities law violations in connection with Mercer's financial advising, whereas

the OSHA filing seeks a remedy for Mercer's retaliatory termination of

Xanthopoulos through an award of personal remedies such as reinstatement,

backpay, and compensatory damages. Therefore, the ALJ and ARB did not abuse

their discretion in finding equitable tolling unwarranted.

### 2. *Xanthopoulos Did Not Mistakenly File in the Wrong Forum Because He Knew That OSHA, Not the SEC, Received Retaliation Complaints*

Xanthopoulos knew that OSHA was the proper forum for his retaliation

complaint, yet purposefully continued to submit TCRs to the SEC. A fellow

AHEPA member advised Xanthopoulos to contact OSHA about his discharge in

"winter 2018." Pet'r's Ex. B. at 1. Xanthopoulos planned to contact OSHA but

delayed doing so. *Id.* at 1. Xanthopoulos filed between one and four TCRs in the

interim. *See* Pet'r's Exs. I (dated January 15, 2018), J (dated February 08, 2018),

K (dated March 10, 2018), and L (dated June 26, 2018). Three identified

Xanthopoulos as having suffered retaliation. *See* Pet'r's Exs. J-L. Had

Xanthopoulos mistakenly filed his SOX whistleblower claim through the TCR

form, he would have no need to continue filing TCR forms upon learning that OSHA reviewed retaliation complaints. Xanthopoulos's persistence in filing TCRs after learning that OSHA was the proper venue for retaliatory discharge claims demonstrates that Xanthopoulos deliberately filed his TCRs as non-SOX claims.

Xanthopoulos's June 2018 TCR displays his awareness that the SEC was not the agency that could investigate his retaliation claim. Xanthopoulos noted that he was "currently investigating my options" regarding potential sexual harassment, wrongful termination, and illegal retaliation lawsuits. Pet'r's Ex. L. at 8. He further advised that he would "keep [the SEC] posted of my legal actions as needed." *Id.* Thus, Xanthopoulos was exploring his retaliation claim independently of the SEC investigation. Xanthopoulos knew that investigating legal options was incumbent upon himself because he understood that OSHA—not the SEC— investigated retaliatory discharge claims, and he was "planning to make such contact." Pet'r's Ex. B. at 1.

Xanthopoulos intentionally delayed filing his OSHA complaint because he hoped to locate additional evidence to bolster his case. As he explained to the ALJ, Xanthopoulos planned to contact OSHA but felt that he had to amass sufficient evidence "to sound remotely credible." Pet'r's Ex. B at1. Believing that "[i]t would be hard to prove I was fired because I had contacted the SEC," Xanthopoulos gathered information "for a full year after my 2017 discharge." *Id.*

at 2, 4.  Xanthopoulos viewed the August 27, 2018 SEC press release on

Transamerica as the strongest evidence to support his claim, observing that before

its release, "information at hand was not enough justification to file an OSHA/SOX

report."  *Id.* at 4.  Xanthopoulos finally decided to file his SOX complaint with

OSHA the month following the press release's publication.  *See* Complainant's

Whistleblower Compl.

Xanthopoulos's deliberate delay precludes equitable modification.  The

statute of limitations on a SOX claim begins to run when the complainant learns of

an adverse action following the complainant's SOX-protected activity, not when

the complainant amasses evidence of the employer's retaliatory motive. *See*

*Coppinger-Martin v. Solis*, 627 F.3d 745, 750 (9th Cir. 2010) (explaining that

because establishing a prima facie allegation of retaliation under SOX does not

require that the employee conclusively demonstrate the employer's retaliatory

motive, an employee's claim accrues when she learns of the adverse action, not the

employer's motive).  And, equitable tolling cannot be used to save an otherwise

untimely claim where the complainant has delayed filing in hopes of discovering

more about the employer's retaliatory motive.  *Id*. at 750-51 (rejecting employee's

argument that she was entitled to equitable tolling of the pre-2010 90-day statute of

limitations for SOX claims because she needed further information regarding the

employer's motive for terminating her employment).  Here, Xanthopoulos learned

of the adverse employment action on the day he was discharged, October 03, 2017. As Petitioner's Brief makes clear, Xanthopoulos had enough information on that date to establish a prima facie case of retaliation, thereby triggering SOX's statute of limitations. *See* Pet'r's Br. at 12-15; *Coppinger-Martin* 627 F.3d at 750. Under *Coppinger-Martin*, Xanthopoulos's untimely SOX complaint may not be equitably tolled because Xanthopoulos postponed filing to gather evidence of Mercer's alleged retaliatory motive. *Id*. at 750-51

Xanthopoulos made no mistake regarding the correct forum for filing his whistleblowing complaint. Xanthopoulos knew that he should file with OSHA in winter 2018, prior to the statute of limitation's expiration. Despite this knowledge, Xanthopoulos purposefully delayed filing his OSHA complaint until September 2018. Xanthopoulos continued to submit non-SOX filings with the SEC while exploring his legal options. This course of action demonstrates that Xanthopoulos was not mistaken as to the correct forum for his claim. Rather, he simply chose to delay filing his retaliation complaint until he was satisfied that he could present a strong evidentiary case. Such circumstances do not merit equitable tolling. *See Johnson*, 421 U.S. at 466 (petitioner "slept on" his Section 1981 rights by failing to file within the appropriate timeframe); *Coppinger-Martin*, 627 F.3d at 750-51 (holding that equitable tolling is unwarranted where petitioner has delayed filing a retaliation claim to gather additional information). Accordingly, the ALJ and ARB

acted well within their discretion in declining to toll SOX's 180-day statute of limitations in this case.

## CONCLUSION

The ALJ and the ARB correctly dismissed Xanthopoulos's complaint because he failed to file his SOX complaint within the 180-day limitations period and because he did not demonstrate that equitable tolling was merited. For this and all of the foregoing reasons, this Court should affirm the Board's Final Decision and Order dismissing Xanthopoulos's complaint.

Respectfully submitted,

KATE O'SCANNLAIN
Solicitor of Labor

JENNIFER S. BRAND
Associate Solicitor

SARAH K. MARCUS
Deputy Associate Solicitor

MEGAN E. GUENTHER
Counsel for Whistleblower Programs

/s/ *Anne E. Bonfiglio*

ANNE E. BONFIGLIO
Attorney for the Secretary of Labor

U.S. Department of Labor
Office of the Solicitor
200 Constitution Avenue, N.W.
Room N-2700
Washington, D.C. 20210
(202) 693-5561


Dated: December 16, 2020

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,933 words. This brief complies with the typeface requirements of Fed R. App. P. 32(a)(5) and the type-style requirements of Fed R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

Dated:    December 16, 2020          */s/ Anne E. Bonfiglio*
          Washington, D.C.           Anne E. Bonfiglio
                                     Attorney

**CERTIFICATE OF SERVICE**

I hearby certify that on December 16, 2020, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Anne E. Bonfiglio*
Anne E. Bonfiglio
Attorney

U.S. Department of Labor
Office of the Solicitor
200 Constitution Avenue, N.W.
Room N-2700
Washington, D.C. 20210
(202) 693-5561
Bonfiglio.Anne.E@dol.gov