**20-2604**
_____

**United States Court of Appeals
For the Seventh Circuit**
_____

APOSTOLOS XANTHOPOULOS,

*Plaintiff-Appellant*,

v.

UNITED STATES DEPARTMENT OF LABOR,

*Defendant-Appellee*,

MARSH & MCLENNAN COMPANIES, INC.,
Doing business as MERCER INVESTMENT CONSULTING, LLC,

*Intervenor – Defendant-Appellee*.
_____

On Appeal from the United States Department of Labor
Agency Case No. 2019-0045
_____

**APPELLANT'S REPLY BRIEF**
_____

George S. Bellas
Jillian Tattersall
Bellas & Wachowski
*Counsel of Record*
15 N. Northwest Highway
Park Ridge, Illinois 60068
(847)-823-9032
george@bellas-wachowski.com
jillian@bellas-wachowski.com

*Attorneys for Appellant*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES                                                               i

ARGUMENT                                                                           1

    I.    Respondent Contradicts Itself in Its
        Reliance on the Cover Form.                                      2

    II.   Filing Pro Se, Dr. Xanthopoulos
        Provided What the SEC Requested.                                 3

    III.  There is No Evidence that Dr. Xanthopoulos
        Knew Where to File His Complaints Without
        Fabricating Additional Facts.                                    5

CONCLUSION                                                                         7

CERTIFICATE OF COMPLIANCE                                                          8

PROOF OF SERVICE                                                                   9

# TABLE OF AUTHORITIES

STATUTES

Securities Exchange Act of 1934, 17 CFR § 240.21F-10 …………………………………………….. 3

SECONDARY AUTHORITIES

U.S. Securities and Exchange Commission, Office of the Whistleblower, …………………………. 3
Frequently Asked Questions, (Dec. 10, 2020),
https://www.sec.gov/whistleblower/frequently-asked-questions#faq-1.

**ARGUMENT**

The ARB's Determination is arbitrary and capricious because it relies on out of context statements and a pro se Petitioner's failure to request a specific statutory remedy as the sole basis for its decision. Respondent[1] and Intervening Respondent engage in this same type of arbitrary and capricious reasoning while also encouraging this Court to do the same. Respondent and Intervening Respondent pluck misattributed lines out of context from TCRs dealing with three subjects:

1) Mercer's faulty rating system, which Dr. Xanthopoulos worried was misleading investors,

2) Dr. Xanthopoulos's retaliatory termination, which Dr. Xanthopoulos believed that the SEC was investigating, and

3) the sexual harassment experienced by Dr. Xanthopoulos which he knew that the SEC was not investigating and, for the most part, did not fall directly under the SEC's purview except to the extent that employee conduct impacted Intervening Respondent's ratings.

As Dr. Xanthopoulos's lengthy filings before the ALJ and SEC indicate, he is prone to providing excessive information and detail. Respondent and Intervening Respondent would like this Court to believe that because a pro se complainant was also explicitly worried about investors relying on meaningless and potentially even fraudulent investment ratings provided by his employer, he was necessarily not concerned about a remedy for his own retaliatory termination. The idea that a claimant may raise one issue only to the exclusion of all others in any forum is preposterous.

---

[1] Throughout their Brief, Respondent inexplicably cites to prior exhibits rather than directly to either the long or short appendix, making all of their record-based assertions exceedingly tedious to reference.

**I. RESPONDENT CONTRADICTS ITSELF IN ITS RELIANCE ON THE COVER FORM.**

Respondent and Intervening Respondent want this Court to believe that a pro se complainant who repeatedly complained to the SEC about his retaliatory termination and who completed SEC forms that specifically inquired as to whether the complainant had been retaliated against and terminated on the very first page did so with no expectation that the SEC would investigate his termination or take action regarding his termination. (A.89-90, A.101-102, A.114-115). On the other hand, they also want this Court to accept that checking a box regarding a whistleblower reward on that same form is conclusive evidence that Dr. Xanthopoulos sought only or primarily a whistleblower reward as remedy. (Int. Resp. Br. at 3, 4, 8, 9; Resp. Br. at 24-26). Every time Dr. Xanthopoulos submitted a claim using the form provided by the SEC, Dr. Xanthopoulos checked a box on the cover indicating that he was terminated as a result of his whistle blowing activities. (A.89-90, A.101-102, A.114-115.) This form specifically asks whether the Complainant suffered an adverse action as a result of their claims. *Id.* Filing his complaints pro se, the cover of the form alone would lead a reasonable complainant such as Dr. Xanthopoulos to believe that the SEC is investigating his claims. Inexplicably, while Respondent and Intervening Respondent give no weight to the checking of this box, the checking of a box on the exact same form indicating that Dr. Xanthopoulos sought a monetary whistleblower award is presented as conclusive proof, despite being the only time that a monetary whistleblower reward is mentioned, that Dr. Xanthopoulos's sought only a monetary whistleblower award. (Resp. Br. at 25). There is no evidence in the record that Dr. Xanthopoulos even knew what a monetary whistleblower reward was, why it was given, or how it was awarded. To the contrary, Dr. Xanthopoulos indicated that he believed Transamerica was fined as a result of his reports to the

SEC yet there is no evidence that Dr. Xanthopoulos sought a monetary whistleblower reward as a result of this fine. (SA. 11; A. 46-47). There is no evidence that Dr. Xanthopoulos even understood that a fine based on his tips may entitle him to an award. Respondent and Intervening Respondent cannot dismiss multiple detailed retaliation claims in addition to a checked box on a form as "casual references" yet rely on a checked box on a form as evidence of primary intent.

The SEC itself, when explaining the SEC whistleblower program, specifically states that its purpose is two-fold: to provide a monetary reward and to prevent retaliation against individuals who submit information to the SEC. https://www.sec.gov/whistleblower/frequently-asked-questions#faq-1. This one box checked on Dr. Xanthopoulos's cover forms remains the only reference to a monetary whistleblower reward in all of his lengthy TCR submissions. Respondent and intervening respondent repeatedly cite this purpose despite the fact that checking this box is not the mechanism for claiming a monetary whistleblower reward nor could a monetary reward be given based on the checking of this box. *See* 17 CFR § 240.21F-10 (requiring any individual seeking a monetary whistleblower award to complete an additional form within 90 days of the assessment of a fine in excess of one million dollars). In contrast, Dr. Xanthopoulos repeatedly raised the issue of retaliatory harm suffered as a result of his whistleblowing with the SEC, not only on the same form where the checked the monetary reward box but also in the details of his report. (*See, e.g.,* A.60, A.67, A.76-79, A.84, A.101, A.101-102, A.114).

II. **FILING PRO SE, DR. XANTHOPOULOS PROVIDED WHAT THE SEC REQUESTED.**

The Department of Labor argues that Dr. Xanthopoulos's TCRs served only to provide information and Dr. Xanthopoulos never submitted performance reviews or human resource findings along with his complaints. (Resp. Br. at 22). These items were never specifically

3

requested and a pro se claimant who submitted a standard form, such as Dr. Xanthopoulos, would not know how to support a specific claim for retaliation – or know that he was supposed to request precise remedies apart from the mere allegation of retaliatory termination – absent a specific request for specific proof. Furthermore, as the Respondent admits, Dr. Xanthopoulos clearly alleged retaliation in multiple TCRs filed between January and June of 2018. Where Dr. Xanthopoulos felt that additional evidence was needed to illustrate his claims, particularly those related to statistics which, as a professor of statistics, Dr. Xanthopoulos felt compelled to explain repeatedly throughout his filings. Dr. Xanthopoulos frequently tied those explanations into his retaliation claims by reminding the SEC that the detail provided would out him as the whistleblower.

Intervening Respondent claims that nothing on the record establishes that the SEC ever responded to Dr. Xanthopoulos's complaints or took any action on his tips. (Int. Resp. Br. at 5). This statement is also blatantly disingenuous. The Record does not address the merits of Dr. Xanthopoulos's underlying claims, nor was it meant to do so. The TCRs contained in the record strongly suggest that a two-way dialogue was ongoing with Dr. Xanthopoulos. Moreover, there was no reason to place the SEC's actions regarding Dr. Xanthopoulos's claims of wrongful termination as they are not at issue in this appeal. The only thing at issue in Dr. Xanthopoulos's appeal to the ARB was whether or not the statute of limitations should be tolled. Were the issue whether or not the SEC took any actions in response to Dr. Xanthopoulos's complaints, Dr. Xanthopoulos would have submitted evidence of a different nature.

Respondent Department of Labor similarly treats the TCRs related to Dr. Xanthopoulos's termination as the only TCRs filed by Dr. Xanthopoulos. (See Resp.'s Br. at 7-9). As Dr.

Xanthopoulos indicated in all of his prior filings, he provided only the TCRs that pertained to his retaliation claims. (Pet. Br. at 2).

### III. THERE IS NO EVIDENCE THAT DR. XANTHOPOULOS KNEW WHERE TO FILE HIS COMPLAINTS WITHOUT FABRICATING ADDITIONAL FACTS.

The intervening Respondent spends a great deal of time discussing a footnote dropped by the ARB regarding a conversation that Petitioner had with a kind gentleman regarding OSHA and fabricating the content of that conversation. The exact content of that conversation is nowhere on the record beyond the fact that someone once mentioned contacting OSHA. There is nothing on the record that indicates Petitioner was ever told that OSHA handled whistleblower claims. This individual did not elaborate on why Xanthopoulos should contact OSHA. This individual never mentioned OSHA handled wrongful termination or whistleblower claims. This individual did not tell Dr. Xanthopoulos to file a Complaint with OSHA. As recounted by Dr. Xanthopoulos, this "kind gentleman" mentioned only that Dr. Xanthopoulos try contacting OSHA. Dr. Xanthopoulos, understandably as a lay person, would not think that the Occupational Health and Safety Administration sounded like the right place for the type of complaints that were unrelated to health and safety. Actual knowledge that OSHA was the proper place for a whistleblower retaliation claim cannot be attributed to Dr. Xanthopoulos absent fabrication.

On the contrary, as Respondent points out, Petitioner filed complaints of wrongful termination with the SEC at least three times after someone mentioned OSHA to him. As Respondent states, "Had Xanthopoulos mistakenly filed his SOX whistleblower claim through the TCR form, he would have no need to continue filing TCR forms upon learning that OSHA reviewed retaliation complaints." (Resp. Br. at 27-28). Respondent is correct but makes a huge factual leap that is much less plausible than the actual explanation: Dr. Xanthopoulos continued to complain

5

of retaliation to the SEC via TCR forms precisely because he did not know that OSHA was the proper forum for his complaints.

Similarly, both Respondent and Intervening Respondent continue to cite Dr. Xanthopoulos's statements about potential sexual harassment lawsuits as evidence that he knew that the SEC would not investigate his retaliation claims. (Resp. Br. at 22-23; Int. Resp. Br. at 5). Dr. Xanthopoulos believed that the SEC would not be investigating his sexual harassment claims except to the extent that his fellow employees' conduct impacted Mercer's ratings and that he would need to pursue a separate action for a sexual harassment claim. (A.114). This contemplation of a sexual harassment suit was an unrelated to his claims with regards to whistleblowing and, again, the reference to suing constitutes one line plucked out of context. (S.A.11, A.114).

Finally, both Respondent and Intervening Respondent ignore the fact that Dr. Xanthopoulos set forth all the necessary elements to establish a claim of wrongful termination and assert that it is not a valid claim without a request by a pro se Complainant for a specific remedy. Respondent and Intervening Respondent cite no case law or statute suggesting that a pro se complainant must know which remedy to request or how to request them because no such case law or statute exists. Respondent and Intervening Respondent ask this Court to place an additional burden on pro se Claimants. This Court should reject this demand for an additional burden on those proceeding pro se.

**CONCLUSION**

For the foregoing reasons, this Court should reverse the United States Department of Labor's decision to affirm the ALJ's Order Dismissing Appellant's Complaint.

| | |
|---|---|
| Dated: January 6, 2021<br>Park Ridge, Illinois | /s/ George S. Bellas<br>George S. Bellas<br>Bellas & Wachowski<br><br>Attorney for Plaintiff-Appellant<br>15 N. Northwest Highway<br>Park Ridge, Illinois 60068<br>(847)-823-9032<br>george@bellas-wachowski.com |

**CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32, because this document contains 1,757 words, excluding the parts of this document exempted by Fed. R. App. P. 32(f).

    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally-spaced typeface using Microsoft Word 2016 in 12-point Calibri style font.

| | |
|---|---|
| Dated: January 6, 2021<br>Park Ridge, Illinois | /s/ George S. Bellas<br>George S. Bellas<br>Attorney for Plaintiff-Appellant |

**PROOF OF SERVICE**

The undersigned, counsel for Plaintiff-Appellant, Apostolos Xanthopoulos, hereby certifies on January 6, 2021, two copies of the Appellant's Reply Brief and a digital version containing the brief, were delivered using CM/ECF system to counsel for the Defendant-Appellee, United States Department of Labor, and Intervenor-Appellee, Marsh & McLennan Companies, Inc., doing business as Mercer Investment Consulting, LLC.

Dated: January 6, 2021　　　　　　　　　　　　　　/s/ George S. Bellas
Park Ridge, Illinois　　　　　　　　　　　　　　　　George S. Bellas
　　　　　　　　　　　　　　　　　　　　　　　　Attorney for Plaintiff-Appellant